Jackson, J.
It appears from the record, which is brought before us by the certiorari, in this case, that George Bird was duly commissioned in June, 1797, as a lieutenant in a company of cavalry in *388 the militia of this Commonwealth ; and that in May, 1799, he was honorably discharged from that office ; and the question [*444] is, whether this entitles him to an * absolute exemption from militia duty. Some objections were also made to the form of the proceedings before the justice ; but the Court did not think them sufficient to quash the proceedings ; and the cause has been delayed on account of a doubt on the construction of the statute, as it applies to the question before stated.
By the statute of 1793, c. 14, all persons who had “ held the office of a subaltern or office of higher rank ” under the government of the United States, or that.of either of the United States, were exempted from militia duty. This statute continued in force until March, 1800 ; and, although it speaks of those who have held such an office, yet it was understood to be prospective also in this respect, 'and to include all who, when required to do duty in the militia, should have held such an office. Under this statute, therefore, Bird had acquired an exemption from militia duty by the office of lieutenant in t.he cavalry, which he held nearly two years.
This statute was repealed on the fourth of March, 1800 ; and the legislature, by the new statute then made,(1) thought proper to limit the exemption of militia officers, for the future, to such as should complete the term of five years’ service, or be superseded. They did not, however, think it expedient to call again into the ranks officers who had been already exempted under preexisting laws ; and, therefore, provided in the same statute for the exemption of all who had theretofore held a commission in the army or militia, and who were then out of office. Under this statute, then, Bird still continued exempted.
On the sixth of March, 1810, the last-mentioned statute was repealed, and a new statute was then made, on which the present case depends.(2) By this statute there are two classes of exempts ; the first, of those who are exempted absolutely from all militia duty ; and the second, of those who are exempted from all duty, excepting that of keeping themselves furnished with arms and equipments, and sending them to be inspected at the annual inspection in May, upon condition that they pay two dollars annually to the treasurer [*445] of *the town where they reside. In the first class are included “ all officers who have heretofore held, or may hereafter hold, commissions in the militia of this State, or any other of the United States, for the term of five years, or shall have been superseded and discharged.” In the second class are included “all officers who have heretofore held, or may hereafter hold, commis* *389 sions in the militia of this State, or any other of the United States, for a less term than five years.”
It is manifest that the case of the respondent, Bird, is literally embraced by this latter description. It is equally clear that he does not come within the first class. He did not serve five years, and he was not superseded. This latter expression is understood to apply, not to the case of a corps deranged or disbanded, whereby an officer is left without any effective command ; but to an officer whose rank may entitle him to expect promotion to a vacancy, and who finds one of his juniors preferred to the vacancy, and placed in a command over him. In some cases of that description, it is considered inconsistent with military honor for the officer so superseded to continue in the service ; and the legislature have so far yielded to this opinion, as not to require an officer so situated to continue to serve the five years, in order to earn this exemption from future service. But, whatever may be the meaning of the term, there is nothing in the case to show that Bird was superseded, in any sense of that expression.
It has, however, been supposed, that the legislature could not have intended, in passing this last statute, to revoke exemptions which had been acquired under preceding laws. It is said to be contrary to the ordinary course of legislation, and to the common principles of justice, to destroy a privilege once granted to an individual, and especially when the grant is in consideration of public services performed by the individual. The case has been supposed, of an exemption actually purchased by a kind of contract with the government, as if, in the last statute, instead of requiring the *payment of $2 annually, it had been enacted, that any [*446] of the persons there described should be perpetually exempted upon paying at once the sum of $100. Many similar cases may be imagined ; and the argument derived from them acquires additional force from the construction understood to have been generally given to this statute by the militia officers, among whom, it is said, that a person in the situation of this respondent is not considered as now liable to be enrolled.
These considerations certainly have great weight; and they have induced us to hesitate, and to endeavour, if possible, to find some construction of this statute, by which the respondent might continue to be exempted, according to the terms of the law, under which he formerly served. But it seems to us impossible to avoid the clear and plain import of the language used by the legislature. The clause in question, describing the officers who are conditionally exempted, may, perhaps, have been intended principally for those whose term of service occurred after the passing of the act, which required five service as the price of an absolute exemption. But the words *390 of the statute embrace equally all who had served at any formel period. We cannot presume that officers in the situation of this respondent were not in the contemplation of the legislature, when their case is so expressly described and provided for in the statute.
The only question, therefore, is, whether the legislature had power, under these circumstances, to revoke the exemption formerly enjoyed by Bird, and to require him to do duty among the conditional exempts. We are not prepared to say that any one set of legislators can control their successors to this extent, in a case of such vital importance to the Commonwealth. There may undoubtedly be cases in which it might be deemed a breach of the public faith to revoke such exemptions ; and it is not to be supposed that the legislature would do it in any case without very powerful motives. [*•447] But we are not authorized to weigh * those motives, or to suffer them to have any influence on our decision, when the law is clearly and unequivocally expressed.
We cannot, in this case, allow the exemption claimed by the respondent, without deciding that the legislature cannot, under any circumstances, require the services of an individual who has once been exempted. We must say, that an able-bodied citizen, whose services in the militia have been dispensed with or commuted in time of peace and tranquillity, can never afterwards be compelled to lend his aid to the government, although the existence of the State may be threatened by the most formidable foreign or domestic enemy. We can see no principle, on which the exemption in this case could be allowed, that would not also involve a case like that here supposed. This would be carrying those exemptions to an extent that never could have been contemplated, either by the legislature, who granted them, or by the citizen, who performed the conditions prescribed by the law. We can, therefore, see no sufficient cause to quash these proceedings.

Proceedings affirmed.

 Stat. 1799, c. 73.

 Stat. 1799, c. 108,