Ruffin, C. J.
 

 The defence would not be available at common law under either issue. By presenting the note for payment an action arose to the plaintiff as the holder ;j' and it is fully settled, that a promissory note, made payablej' in the body of it on demand at a certain place, becomes'! due only upon a presentment at that place. Hence, the!* offer of the two notes for $50 in payment did not amount*! to payment, nor do they bar by way of set off. There was ¿t one period a conflict of judicial opinions in England, in respect to an acceptance of a bill of exchange, whether, if given
 
 “
 
 payable at a particular place” it was to be considered a general acceptance or a special one, requiring pie-
 
 *77
 
 sentment at the place named; and the point was not settled, until the opinions of the Lord Chancellor and all the Judges were taken on it in the case of
 
 Rowe
 
 v
 
 Young,
 
 2 Bligh 391, and 2 Brod. & Bing. 180. It was there held, that a declaration on such an acceptance was bad, because it did not aver presentment at the designated place. No one of the Judges expressed a doubt, that, notwithstanding some previous
 
 nisi prius
 
 cases, the law was, that, if one promise by his note to pay at a particular day and place, there must be a demand there. Lord Eldon explicitly laid that down as the established law, and he stated the reason to be, that the place stands in the body of the instrument as a part of it, which must be declared on as it is, and proved as described in the declaration. Indeed, it is apparent, that it is an important part of the contract. For, when one engages to pay money generally, without mentioning a place for the payment, the law is, that the debtor must seek the creditor, whether the payee or his assignee, and at his peril find him, in order to save himself from the payment of interest and an action. By specifying the place, both parties are saved the trouble, but especially the maker, as he knows where to take the money to meet his note at maturity. The law cannot be said to be settled in the United' States exactly in the same way; as in some, and perhaps most of the Courts, a distinction has been taken, that ihe declaration need not aver the presentment at the place, but the want of it may be alledged
 
 as
 
 matter of defence, if a loss arose therefrom, and the debtor will be discharged
 
 pro raía;
 
 as if the note be payable at a bank, and the debtor deposit the money there, and the bank afterwards fail. Without going through the cases in this country in detail it suffices to refer to that of
 
 Wallace
 
 v
 
 McDonnell,
 
 13 Peters, 36, in which most of them were cited, and considered by the Supreme Court as establishing that rule, and it was then
 
 *78
 
 adopted. It has indeed been questioned both by Chancellor Kent and Mr. Justice Story, who hold- the rule 1'aid down in England to be the true one, according to the plain sense of the contract. But it is not material, which posK tion is right in respect- to- notes payable- at a- certain day as-well as place ; since no one-, either in Englander here, has’; supposed, that presentment of a promissory note was not j indispensable when, in the body, it is payable on demand j at a particular place; which is our case.. Even the Court of Kings Bench, whose judgment in
 
 Rowe
 
 v Young, as to. the special acceptance of a bill, was reversed in the House of Lords, held this on demurrer to a declaration by the bearer of a note payable on demand, against the maker, in which presentment at the designated place was not averred..
 
 Saunderson
 
 v
 
 Bowes,
 
 14 East 500. The judgment was founded on this: that the maker did not appear to have been in default before suit brought ;■ and that- has not subsequently been questioned any where. The cases in this country, in which it was held, that the declaration need not aver the presentment of a note payable at a certei-a day and place, distinctly admit it is otherwise as to a note payable on demand at a certain place. It is expressly laid down in
 
 Wallace
 
 v
 
 McConnell,
 
 that upon a note of the latter kind the declaration must aver a demand at the place-; and Mr. Justice Thompson in delivering the opinion of the Court, gives the reason that, until a demand, the debtor is not in default, and so there is no cause of action. There is, therefore, now no doubt, as to the common law, in respect to notes of this kind made by a natural person-;: that the maker is not bound to pay them, until presented at the place, where they are expressed to be payable. And there is no ground for a distinction upon this point between notes made by a natural person and those made by a corporation. . The reason is not less applicable to bills of an incorporated
 
 *79
 
 bank, payable on demand at different branches ; which, for! purposes of local accommodation, the law generally requiresl to be established upon shares of the capital adequate to meet the notes issued at the respective branches, in respect to which punctuality is of the utmost consequence to the public, and is usually enforced under heavy penalties. Every one knows that no individual or bank can at all times and everywhere discharge all outstanding liabilities, due and not due ; which would make credit useless. Then, each point of a banking institution, having branches, has its own liabilities and must have its own resources; and it can only fulfil its engagements to the public, when left to manage its own funds without impediment from the law. If the funds appropriated to the business at one place, instead of being left for that purpose, may be daily diverted therefrom at the pleasure of the holders of the notes of every other part of the institution, it would be manifestly impossible for the bank and its branches to meet their notes for any length of time. It is therefore apparent, that the provision in the notes, that they are. payable on demand at the several branches, is of their essence ; and consequently there is at common law no liability on such a note but for not paying it, when demanded according to its tenor.
 

 The defence, however, is not founded on the Commoa Law, but upon an Act passed at the last session of the Assembly, entitled “ An Act in relation to exchanges of notes between the several banks of this State.” Yet, the discussion of the rule at Common Law was not the less needful, in order to a proper understanding of the nature of the contract constituted by notes in this form, and of' the operation of the Statute, if it be effectual.- — Its principal provision is, that when a bank or its branch presents for payment a note of another bank, the latter may pay its note with a note or notes of the former, without regard to the
 
 *80
 
 place where the same may be'payable, It is clear that the case before the Court, is within the Act, and that the question is, as to its validity. — With all respeot to the Legislature, and. every disposition to carry out its will, ii recon,-eileable with the fundamental law, the Court is, nevertheless, constrained to declare this enactment to he plainly contrary to the Constitution of the United States, and, therefore, inoperative. It is so, both upon the ground, that the Act violates a provision of the charter to the plaintiff, and upon the principle, that it interferes with, and violates substantive provisions of the notes of the two parties-^ which can no more be done with respect to the contract of a corporation, than that of a natural person,_For the Court supposes it to be clear law, that a corporation & ¡¡Le an individual, bound by, and may take benefit of, the' general laws, where it is within the reason of them, unless there be particular modifications in the charter. It is not doubted, for example, that a bank is within the Statute avoiding usurious contracts, though no restraint, as to the rate of interest it may take, be expressed in the charter. For while there are stringent prohibitions against oppression on the needy, by individuals 'with their limited means, much more must it be supposed to be contrary to the Legislative intention, that banks, with their large associated wealth and power of making the demand for money easy or tight, should be without restraint upon their exactions on borrowers. The charters, indeed, usually prescribe a rate of interest or discount. But such clauses have their operation in preventing the effect on the bank of a change of the rate of interest by a subsequent general law, and in making the corporation amenable to the State for a violation of its charter. They do not affect contracts with the banks, because there is no provision in them for the avoiding those on which a greater rate is reserved, but that
 
 *81
 
 is left entirely to the general law. Since then, the restraints of general laws apply to corporations, when they are within the reason of those laws, unless excepted, so they are entitled to all the benefits of those laws, like other persons, unless excluded therefrom by the charter. It has been already shown, that a natural person is not bound to pay a note made payable on demand at a particular place, unless, or until it be presented there; and that he is not bound to pay at another place, for the good reason that, except at that designation, he may not be prepared with the means for paying, and may not be able to raise them there without loss. Hence, that part of the note is an essential ingredient in the contract, and a Statute, requiring the creditor, in his natural capacity, to take from his debtor, in payment of a sum due to him at one place, which had never been there demanded, would be plainly incompatible with those two provisions in the Constitution, which restrain a State from making anything but gold and silver coin a tender in payment of debts, and from passing any law impairing the obligation of contracts. Art. 1, sec. 10. The Statute under consideration is likewise within that clause of the Constitution. .For, although that instrument does not mention corporations by name, yet they are within it, as a part of the general law, for the reason already given; and it has, accordingly, been repeatedly held throughout the Union, for example, that a legislative charter to a corporation, is a contract of' inviolable obligation, within that instrument, and that a corporation, created by a State, may sue in the Courts'of the United States or of another State. The rights and contracts of corporations, therefore, have'the full guaranty of the Constitution; and, consequently, this Statute cannot be valid, inasmuch as it essentially changes the obligation of the notes issued by the plaintiff, by requiring them to be taken up — in effect, paid—
 
 *82
 
 at a different time and place from those at which they are payable, according to their terms and their legal effect, when they were issued; which may be, and in most instances must be, to the prejudice of the plaintiff. Such modes of payment might, doubtless, be required in the charier, and it would then be at the election of the citizens to accept it or not. It is remembered that the late Congressional charter of the Bank of the United States provided, that all the five dollar notes, no matter where made payable, should be paid upon presentment at the Bank or any branch. But, without a clause of that kind in the charter, the Legislature cannot give to the notes of a bank a different effect from that legally arising from their terms when made, so as to work a prejudice to the bank. The plaintiff,
 
 therefore,
 
 was not bound to take the notes of its branches in payment of the note- held by it, because those notes were not then and there due, and because, if they had been, they were not. a constitutional tender. If they had then, or at any time before this action was brought, been presented at the places at which they were payable, and payment could not be got, they would have been available as a set off. But that was not done, and the case turns merely on the tender of the notes, under the Act of 1850, at the defendant’s banking-house. without their having been presented at Milton or Wilmington. The Act thus violates the contracts, .constituted between these parties by their respective notes, both in their letter and spirit, and is, therefore, unconstitutional. Under the same clause of the Constitution, the act is avoided for another reason. It happens, that in the plaintiff’s charter it is expressly provided, “ that bills or notes issued ,'by order.of the corporation, promising the payment of money to any one or his order, or to the bearer, shall be binding and obligatory órt the same, in like manner, and with the like force and effect, as upon any private person, if is
 
 *83
 
 sued by him in his natural capacity, and shall be assignable and negotiable as if they were issued by such private person.” 2 Rev. Stat. p. 63, s. 25. Now, the contract constituted by the charter between the State and the bank, though inviolable according to the constitution, is in fact, violated by the Act of 1850, since, under the circumstances mentioned in it, a force and effect is given to the notes of the bank, which differ from that which, as notes of persons in their natural capacity, they would legally have; which cannot be done.
 

 Therefore, the judgment must be reversed, and judgment entered for the plaintiff, on the case agreed, for the principal money, and interest from the day of the demand.
 

 Per Curiam. Judgment accordingly.