## The People on the Relation of Cornelia G. Throop v. The Auditor General.

The compact under which Michigan was admitted into the Union exempts from taxes certain military bounty lands, while they continue to be held by the patentees and their heirs, "*for the term of three years from' and after the date of the patents*" therefor. This language being clear and unambiguous, must be applied precisely according to its tenor, and cannot be held to mean three years from the *location* of the land.

Where lands thus exempt have been taxed, the Auditor General may reject the taxes on his own motion, and he may be compelled to do so by mandamus, on application of the owner.

*Heard and Decided November 14th.*

Motion for a Mandamus.

*J. M. Howard, Attorney General,* for the respondent.

*Buel & Trowbridge,* for the relator.

CAMPBELL J.:

In this case a *mandamus* is asked for to compel the

Auditor General to reject the taxes upon certain lands, which were patented to the relator in 1859, on the ground that they are military bounty lands granted for services rendered during the war of 1812. By the compact under which Michigan was admitted into the Union, it was agreed that such lands, "*while they continue to be held by the patentees or their heirs,*" shall be exempt from taxes "*for the term of three years from and after the date of the patents respectively.*"— *Comp. L. p.* 40.

The construction put upon this act by the Auditor General confines the exemption to three years from the *location of the lands*, and not from the date of the patent. The object of the law was to enhance the value of the land, and consequently of the scrip, by an exemption from taxation for three years from the time when a complete title in fee became vested, unless the title should be changed after such vesting. The language of the statute is so clear and free from ambiguity that it is not open to construction. The *date of the patent* is the starting point mentioned, and was probably selected for its certainty and convenience of proof. We have no more right to select the date of location than the date of the bounty warrant or any of its assignments. We are bound to apply the clear language of the law precisely according to its tenor. The lands can not be taxed until three years from the date of the patent, unless previously sold by the patentee or her heirs.

It is claimed, however, that this is not a proper case for a mandamus, because no clear duty lies upon the Auditor General which the relator has any interest in requiring him to perform.

We think a duty is laid upon that officer to reject such taxes, whenever "*he shall discover before the sale, or before the conveyance of any lands, as aforesaid, that the same were not subject to taxation at the date of the assessment of the taxes.*" — *S. L.* 1858, *p.* 186, § 99. As it was argued

that the statute was silent as to a rejection of taxes, and merely authorized him to forbear selling, ·we deem it proper to refer to some [sections which may throw light upon this subject.

By section 858 of the Compiled Laws, all lands returned to the Auditor's Office upon which the taxes "*shall not be paid, or be charged back to the proper county*," are required to be sold as pointed out by the statute. By section 889, the Auditor General is required in all cases where taxes upon lands returned delinquent to his office "*shall be rejected for any cause*," to "*charge the same over to the county from which such taxes were returned*," unless the lands have been set off to another county. This section occurs in a subdivision entitled "*Of Rejections and Re-assessments*," which title has been preserved in the various tax-laws for many years in precisely the same connection. The object of charging back these taxes is to offset or discharge the credit already given to the county for the same taxes when first returned to the Auditor's office. When so charged back, they are to be re-assessed upon the same lands, if rejected for mere informality, or upon the whole township, if absolutely illegal:—1 *Comp. L.* §§ 888 to 893.

It is very evident that this action contemplates an absolute rejection and annulling of the taxes referred to, leaving them no longer in existence for any purpose. It is also plain that the statute contemplates that such rejection may be made before sale. No taxes can be charged back without putting an end to them, and sales are to be made for all taxes not charged back or paid: — *Comp. L.* §858.

If we now look back to ascertain in what cases the Auditor General can thus dispose of taxes returned to his office, we find no section relating to any interference with such taxes before sale, except section 881 of the Compiled Laws, which is amended by the law of 1858, and now reads as follows: "If the Auditor General shall discover before the sale, or before the conveyance of any lands,

as aforesaid, that the same were not subject to taxation at the date of the assessment of the taxes, or that the taxes have been paid, he shall forbear to cause the same to be sold, or withhold a conveyance after sale, as the case may be; and in such case, if a sale has been made, he shall, on demand, cause the money paid therefor to be refunded, with seven per cent interest thereon."—*S. L.* 1858, *p.* 186.

This forbearance to sell could not reasonably be supposed to be only temporary, when the only causes authorizing it go to invalidate the tax entirely. And, as this is the only provision allowing such taxes to be interfered with before sale, it is manifestly the "*rejection*" contemplated by the subsequent sections, which require the same taxes to be charged back and re-assessed. A rejection followed by such consequences is a *total and absolute* remission or rejection of the taxes, and the subsequent sections, therefore, referring to it, use a phrase entirely appropriate.

The law requires the Auditor to take this step, whenever he shall discover the facts which show the illegality. He has no discretion when such a discovery is made. We can not imagine that the law designed that he should be compelled to make investigations without any clue into the condition of the numberless lands returned delinquent, nor that parties aggrieved by the existence of unlawful liens on their lands should be prevented from applying for a remedy. While he may act on his own motion, it is very plain that the statute creates also a remedy for the persons interested in avoiding the tax. And when they make out, as the relator has done here, a case not open to any doubt, and which is not disputed, the Auditor is bound to set aside the illegal taxes.

This is the practical construction which has always been considered as settled in this State. The action of the department has been very generally based upon applica-

tions from the injured land owners. We do not think any other would carry out the design of the law.

The mandamus is allowed, directing the Auditor to reject the taxes in question.

The other Justices concurred.