## EX PARTE ABRAHAM MAYER.

Applicant, previous to the 4th day of June, 1863, was enlisted as a soldier in the army of the Confederate States, for the term of three years. On that day, he offered a substitute, who was fifty years of age, and, on examination, being found capable, was received, and applicant discharged. On the 3d day of March, 1864, applicant was enrolled by the Enrolling Officer for Panola County, and ordered to report to the commandant of a camp of instruction. On the 12th of March, applicant sued out a writ of Habeas Corpus, and prayed for a discharge, on the ground that he had furnished a substitute. *Held*, that applicant was liable to military service, notwithstanding he had furnished a substitute.

There are two limitations imposed on the legislative power: the first arises from the power of construction, and is vested in the Courts, and applied to written law of all kinds, when the laws are ambiguous or contradictory; the second is, the restrictions imposed by the Constitution, and which the judiciary must enforce.

If the legislative power is restricted, it must be exercised in subordination to the restriction; if it is without qualification of any kind, the power of legislation is co-extensive with the power of the grant.

The power to raise armies is conferred in express terms by the Constitution of the Confederate States; but who shall compose the army, or how it shall be raised, or what number shall constitute it, must, to a great extent, be left to the wisdom and discretion of Congress.

The object of such a grant was to confer a real and substantial power, and its exercise is not to be restrained by any rules which are merely technical, and which are applicable as such, to questions affecting rights of property, or con-

tracts relating to property, or arising by implication from legislative action : the grant must receive such interpretation as will accomplish the object intended by the framers of the Constitution, so far as it can be ascertained.

The power to raise armies must not be so construed as that its use, if exercised, might result in the destruction of the State Governments; or, that would impair any right over which Congress has no power to legislate; or, that would render the Confederate States unable to give that protection to the States to which they are entitled, and may demand under the guarantees of the Constitution.

The presumption is not to be indulged, that Congress has transcended or perverted its authority, in enacting a law under the power conferred to raise armies ; it must be a clear case of the violation of the Constitution, that will warrant the interference of the Courts.

The contracts designed to be protected by the Constitution are, 1st, contracts by which private rights of property are vested ; 2d, in the term contract is not included rights growing out of regulations of the government, relating to public policy, or to statutes giving privileges or granting exemptions ; these rights are in the nature of legislation, and not of compact, and dependent on the discretion of the Legislature.

There is nothing in the Constitution of the Confederate States, which prehibits Congress from violating the obligation of contracts, though such a right is denied to the States.

The repeal of the law allowing substitutes, and making the principal liable to military duty, is not a violation of the Constitution of the Confederate States.

Congress has no power to pass *ex post facto* laws, but the Courts have uniformly construed this power to relate to criminal legislation only.

The government, under the exemption laws, is not a party to the contract between the principal and his substitute ; nor can it be implied from the language of the statute, that such contracts were contemplated by the law-makers, or that the government would incur any liability beyond the obligation to pay the substitute what was paid to any other soldier for like services.

As long as the law of exemption by substitution remained in force, the rights it conferred, were to be held and enjoyed, subject to the future action of Congress ; and it is not to be supposed that the government intended to part with the right to control the subject in the future.

Though there may be a moral obligation to provide for cases of hardship, yet the Courts have ever held, that a moral obligation, only, is not a ground for its enforcement, as a legal right.

Appeal from the Judgment of the Hon. RICHARD S. WALKER, Judge of the 5th District, sitting in Chambers, at Nacogdoches.

*Donly & Anderson*, and *W. R. Poag*, for appellant.

*Morris & Casey*, for appellee.

REEVES, J., delivered the opinion of the Court, and cited Evans v. Eaton, Peters C. C. R., 337 ; Fletcher v. Peck, 6 Cranch, 136 ; Dartmouth College case, 4 Wheaton, 519 ; Butler, et. al. v. The State of Pennsylvania, 10th Howard, 416 ; 1st Kent, 463 ; 10th Howard, 402 ; 4th Barr, 51 ; 6th Sergeant & Rawls, 322 ; Commonwealth v. Bird, 12 Mass., 443.

Judgment affirmed.

MOORE, J., did not sit in this case.