# Dunlap *v.* The State.

## *Forfeiture against Defaulting Juror.*

1. *Exemptions from jury service ; repeal of law granting.*—Exemption from service on juries is granted to particular persons or classes on grounds of public policy, and is always subject to legislative regulation or repeal; and when the law granting it is repealed, the right of exemption ceases, even in favor of those persons who, by the performance of specified services, have earned an exemption under its provisions.

2. *Same ; in Mobile.*—The special act approved December 9th, 1841, incorporating several fire-companies, and exempting the members thereof from jury service, was repealed, as to the grant of such exemptions, by the statute approved February 20th, 1883 (Sess. Acts 1882–3, p. 501) ; and exemptions earned under its provisions are thereby taken away.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. Clarke.

The record in this case shows that, at the January term of said court, 1884, a conditional judgment for $50 was rendered in favor of the State, for the use of Mobile county, against David R. Dunlap, as a defaulting juror ; that said Dunlap appeared, on a subsequent day of the term, and asked to have the forfeiture set aside, claiming exemption from jury service as a member of an incorporated fire-company in the city of Mobile, after five years active service ; that he adduced proof of the facts on which his claim of exemption was founded, and which were not contested ; that the court overruled his claim of exemption, and refused to set aside the forfeiture ; and that he duly reserved an exception to this action and ruling. A supplement to the transcript, added by consent, shows that, at the June term, 1884, the judgment of the court below was amended, on motion of the *defendant*, by making the conditional judgment absolute. The refusal to set aside the forfeiture is now assigned as error.

The exemption was claimed under the 4th section of the act approved December 9th, 1841, incorporating certain fire-companies in Mobile, including the company of which said Dunlap was a member ; which section was in these words : " SEC. 4. *Be it further enacted*, that the members of all the companies designated in the first section of this act shall be exempt, and are hereby exempted, from militia duty, road tax, performance of jury duty as grand or petit jurors in the Circuit or County Courts of Mobile county, so long as they continue to perform

[Dunlap v. The State.]

the duties of firemen under this act; and that any member
who shall have served five consecutive years in any fire-com-
pany in Mobile, without an intermission of over three months,
or who shall have been disabled in the performance of duty as
such, shall be constituted an 'exempt fireman,' and as such en-
titled to all the privileges and immunities of active members of
the companies."—Sess. Acts 1841-2, p. 85; Municipal Laws of
Mobile, 1858, pp. 369-70.

The court held that the exemption was taken away by the
provisions of the act approved February, 20, 1883, entitled
" An act to regulate the mode of selecting, drawing and impanell-
ing grand and petit jurors for the county of Mobile; " the first
section of which declares, " that all male persons who are resi-
dents of the county of Mobile, and not under the age of twenty-
one, nor over the age of sixty-five, are hereby declared to be
subject to jury duty, with the exception of such persons as are
expressly relieved from such service by the second section of
this act." The second section enumerates the several classes of
persons who are exempt, but does not mention the members of
incorporated fire-companies. The third section declares, " that
all provisions of any charter, or of any general, special, or local
law, exempting any person from jury duty in the county of
Mobile, other than those enumerated in the preceding section,
are hereby repealed; " and the last (18th) section further re-
peals " all laws, general, special, or local, in conflict with the
provisions of this act."—Sess. Acts 1882-3, pp. 501-11.

OVERALL & BESTOR, for appellant.—The appellant performed
active duties as a fireman, in the incorporated company of which
he was a member, for the period of time which, by express pro-
vision contained in the charter of said company, exempted him
from service as a juror. He claims that this charter, and the
privileges earned under it, are in the nature of a contract, which
can not be taken away, annulled, impaired, or modified by the
State, without the consent of the company and himself; and
that this charter is in fact still unrepealed, and in full force. The
constitutional provision against laws impairing the obligation
of contracts, which was intended to preserve the inviolability of
contracts " against that legislative interference which the his-
tory of governments has shown to be so imminent in view
of the frequent engendering of popular prejudice, and the
consequent fluctuations of popular opinion" (*Edwards v. Wil-
liams*, 70 Ala. 145), applies to the charters of private cor-
porations; and while exemptions from taxation, when conferred
as mere privileges, may be recalled, when granted on considera-
tions which have been paid or performed, they are irrevocable.
Sedgw. Const. Law, 586, and authorities cited in note; *Home*

[Dunlap v. The State.]

*of the Friendless v. Rouse*, 8 Wall. 430 ; *Mills v. Pearson*, 11 Ired. 561 ; 3 Wall. 51, 73. Bounty laws may be repealed, but the bounty can not be taken away from those who, by performance of the services for which it was offered, have earned it.—*People v. Auditor*, 9 Mich. 327 ; *Montgomery v. Kasson*, 16 Cal. 189. The same principle applies to an exemption from jury service, as expressly decided in the case of *Goodwin, In re*, 67 Mo. 637. But the special act of incorporation is, in fact, not repealed by the general law regulating juries in Mobile. *Rawls v. Kennedy*, 23 Ala. 240 ; *George v. Skeates*, 19 Ala. 738 ; *Pearce v. Bank*, 33 Ala. 693 ; 22 Mich. 322 ; 13 La. Ann. 458 ; *People v. Potter*, 85 Cal. 110 ; *Smith v. Strong*, 7 Hill, 241.

GAYLORD B. CLARK, F. B. CLARK, Jr., and H. PILLANS, *contra.*—The duty of serving on juries is one of the incidents of citizenship, and can be exacted from any one at the pleasure of the sovereign authority. All exemptions are gratuitous, and may be withdrawn at the pleasure of the law-making power.—*Ex parte Scranton*, 71 Ill. 161 ; *Bragg v. People*, 78 Ill. 328 ; *Com. v. Bird*, 12 Mass. 443. It was within the power of the General Assembly, by the act of Feb. 20th, 1883, to repeal the former special act ; and the express repealing clause embraces it.—*Dale v. Governor*, 3 Stew. 387 ; *Salt Co. v. East Saginaw*, 13 Wall. 373 ; *Boyd v. Alabama*, 94 U. S. 645 ; *Stone v. Mississippi*, 101 U. S. 814 ; *Slaughter House case*, 111 U. S. 746 ; *Ex parte Tate*, 39 Ala. 270.

STONE, C. J.—For many centuries, the right of trial by jury has been a cherished bulwark of liberty, with all English-speaking people. Our revolutionary fathers, when they came to form a more perfect union and establish justice, incorporated it as one of the canons in the fundamental law. So, each of the States composing the Federal Union has given the stereotyped phrase a prominent place in its constitution. To be tried by his peers, or equals, was the Englishman's boasted right. Hence, in that country, where official caste prevails, one of the higher classes could only be tried by jurors belonging to the same caste with himself. In that country, juries were selected and impanelled with due regard to the intelligence and good character of its membership. The illustrious Mansfield, while engaged in giving form and definiteness to the commercial laws, was wont to have summoned a jury of intelligent merchants, to aid him in declaring what were and what were not sound usages in commercial transactions.

As early as 1841, it became manifest to the legislature of this State that sufficient care and watchful prudence were not bestowed, in the matter of selecting and drawing juries. It was

then enacted that 'jurors, grand and petit, should be a chosen body—a class selected for their honesty, impartiality and intelligence; men esteemed in the community for their integrity, fair character, and sound judgment. And certain named officers were to make the selection from all the resident freeholders and householders in the county, within certain specified ages. Such has been our statutory law ever since; and the statutes are, or should be, the clearest exponents of the State's policy, upon any subject upon which their voice is heard. And why should not juries be a select body?' They have large share in the administration of the law, in the redress of grievances, public and private, and in the conservation of good order and good morals. Upon their verdicts depends, in great degree, the security of life, liberty and property; an indispensable condition to a State's prosperity. The administration of trusts, such as these, should be confided only to those who have capacity to comprehend, and integrity and moral courage to discharge them.

We have said above, that the officers appointed for the service must select jurors from the body of freeholders and householders, with certain exceptions. Of course, there are exceptions. In the multiform wants and relations of society, there are, and must be, members of professions, occupations and callings, the very nature of whose duties and services to the public forbids that they should be impanelled on juries. They are either called to duty at stated times, or subject to be called thereto at any moment; and delay in such case would defeat the very end and aim of their vocation. Professors and teachers of colleges and schools, and railroad employees, are of the first class; practicing physicians, certain public officers, and, to some extent, active members of fire-companies, doing service in cities or towns, are of the latter class. These are ministers to the public welfare, and to impanel them on juries, whose deliberations will be of uncertain duration, would be to imperil and impair their usefulness in their particular vocation. The State, in its broad conservation of the public welfare, excuses them from one public duty, that they may more efficiently discharge another. All this is done, however, not as a concession, or bounty to one class, but as a means of having every public want cared for. The exemption springs out of the necessities of the case, and is, in no sense, intended as a bounty to the exempted.

Considering that all men are liable to become, in some form, suitors before the courts of the country, and to have their rights of person and property passed on by juries, it would seem strange that so large a body of the wisest and best citizens should seek exemption from this service, scarcely less im-

portant than that of having a learned and incorruptible judiciary. Being unwilling to assist in administering justice to another, how can it be expected that that other will be less selfish, or more patriotic, when the State makes requisition for his similar services? All men should regard jury service, not as a trust to be sought after, but as a duty to the public, to be performed when called on.

In *Green v. The State*, 73 Ala. 26, 40, we said, our statute "fixes a high standard for qualifications of jurors, grand and petit." They are to be selected from the body of freeholders and householders resident in the county, by certain named officers. All are not eligible, but only such as, in the opinion of the selecting board, "are competent to discharge the duties of grand and petit jurors, with honesty, impartiality and intelligence, and are esteemed in the community for their integrity, fair character, and sound judgment." This duty of selecting is a delicate trust, but it should be discharged conscientiously and fearlessly. Interests of great magnitude are submitted to the arbitrament of juries, and only such persons should be chosen for the service, as the selecting officers, well-meaning men, would be willing to trust with the settlement of their own disputes of equal magnitude. Less than this is not a compliance with the letter or spirit of our statutes. A disregard of these high qualifications has tended, and is tending largely, to bring the whole system of jury trials into disrepute.

We have said jury service is a trust, not to be sought after, nor declined. This excludes all those, commonly called "professionals," who loiter about the court-room in the hope they will be placed on the jury, and thereby earn the paltry pittance our statute allows for jury service. Their very desire, and the reason of it, prove their unfitness.

The appellant in this case claims his exemption from jury service, under the act to incorporate the Mobile fire-companies, approved December 9th, 1841. He claims, and shows that, before he was summoned as a juror, he had served as a fireman five consecutive years in one of the said fire-companies; and claims that he is thereby exempted from the "performance of jury duty as grand or petit juror, in the Circuit or County Court of Mobile county." Such is the language of that statute, and his claim is made good, if the legislature had power to grant such exemptions, by irrepealable enactment. This statute was expressly repealed, and the exemption taken away, or revoked, by the act approved February 20th, 1883.—Pamph. Acts, 501. The question is, had the legislature power to take away the exemption, after the appellant had performed the five years service, which the former statute had declared should exempt him from further jury duty.

[Dunlap v. The State.]

Civil government, or municipal regulation, has shorn natural liberty of some of its attributes. The citizen must surrender some rights and immunities he could claim and assert in an unorganized, or natural state, that he may be protected in his essential rights in organized government. The surrender of the one, is the price he pays for the security and protection of the other. Sovereignty is made up of the right the State has, and can assert, to demand of its constituent citizenship, that, under well-defined regulations and limitations, there shall be surrendered up a *quantum* of its substance and personal service, when demanded for the support, defense, preservation, prosperity, and general welfare of the State. On this is founded the whole doctrine of eminent domain, taxation, military service, jury service, and some others. Without these indispensable attributes of sovereignty, the State must perish. Some of them may be classed as the life-blood of the State, and all of them are essential to its prosperity. It is difficult, if not impossible, to formulate an argument, which will authorize one General Assembly to barter away any of these vital prerogatives, beyond the power of a succeeding legislature to revoke it. Judge Cooley, in his excellent treatise on Constitutional Limitations, 383,* uses this forcible language : " The citizen has no vested right in statutory privileges and exemptions. Among these may be mentioned exemptions from the performance of public duty upon juries, or in the militia, and the like ; exemptions of property or person from assessment for purposes of taxation ; exemptions of property from being seized on attachment or execution, or for the payment of taxes ; exemptions from highway labor, and the like. All these rest upon reasons of public policy, and the laws are changed as the varying circumstances seem to require. . . . The fact that a party had passed the legal age under an existing law, and performed the service demanded by it, could not protect him against further calls, when public policy, or public necessity, was thought to require them."

In the case of *Bragg v. The People*, 78 Ill. 328, we find the following language, which we heartily approve : It is impossible for the State to protect life, liberty and property, without the aid of juries. The system is a vital part of the machinery of government. It is the undoubted duty of the legislative department to provide for the selection of jurors, in such way as shall best subserve the public welfare. Of this, of course, it must necessarily be the judge, and may provide that, for the time being, certain classes, by reason of what shall be deemed sufficient public considerations, shall be exempt; but, to say that such exemption shall be perpetual, whatever may be the public necessities, would be to authorize one legislature, by un-

[Guice v. Thornton.]

wise legislation, to tie the hands of its successors, even to the extent of destroying the government."—*In re Scranton*, 74 Ill. 161; *Com. v. Bird*, 12 Mass. 443; *Salt Co. v. East Saginaw*, 13 Wall. 373; *Butchers Union Co. v. Cres. City Co.*, 111 U. S. 746; *Beamish v. The State*, 6 Jere Baxter, 530; *Ex parte Rust*, 43 Ga. 209; Thompson & Merriam on Juries, § 39; *Ex parte Tate*, 39 Ala. 254; *Swindle v. Brooks*, 34 Ga. 67; *Ex parte Mayer*, 27 Tex. 715; *Boyd v. Alabama*, 94 U. S. 645; *Stone v. Mississippi*, 101 U. S. 814; *Dale v. Governor*, 3 Stew. 387.

There is a rule of construction, that where two statutes are irreconcilably repugnant to each other, the later enactment repeals the former by implication, to the extent they are repugnant. There is also a well recognized exception to this rule, where one of the statutes is general, and the other special. A general statute, repugnant to an older special statute, does not repeal it by implication. . This rule, however, has no application to the present suit, for there is no question of repeal by implication raised by this record. The later statute, which expressly relates to Mobile county, repeals, in terms, "all laws, general, special or local," in conflict with its provisions, so far as Mobile county is concerned.

There is nothing in the argument that the exemption promised in the act of 1841 constituted a contract, which a subsequent legislature could not repeal.

The judgment of the Circuit Court is affirmed.