STATE v. CANTWELL.

(Filed October 23, 1906).

*Jury Duty—Exemptions—Repeal—Impairment of Contract.*

1. The exemption from jury duty claimed by defendant under ch. 55, Private Acts 1868, providing that five years' active service in the fire company incorporated by that act shall exempt its members from jury and militia duty during life, is directly in conflict with Rev., sec. 1957, which directs the County Commissioners to place the names of *all* tax-payers of good moral character, etc., on the list for jury duty, the exemptions being stated in sec. 1980, which does not exempt the defendant: *Held,* that the Act of 1868, if public in its nature, is repealed by Rev., sec. 5453, or, if it is a private act, by sec. 5458.

2. Exemption from jury duty claimed by virtue of services in a fire company for five years, as prescribed in its charter, is not a contract, but a mere privilege, and may be revoked by the Legislature at any time.

WALKER, J., dissenting.

APPEAL by Robert C. Cantwell from a judgment of *Judge W. R. Allen* at the April Term, 1906, of the Superior Court of NEW HANOVER.

*Robert· D. Gilmer, Attorney-General,* and *Walter Clark, Jr.,* for the State.
*Davis & Davis* and *E. S. Martin* for the defendant.

CLARK, C. J. The defendant regularly drawn and summoned as a juror for that term of court declined to serve, and was fined $10, and appealed. He claimed to be exempt under ch. 55, Private Laws 1868-'69, ratified 8 March, 1869, which incorporated the Wilmington Steam Fire Engine Company and contains the provision that its "members shall, during membership, be exempt from all jury and militia duty, and

in case of active service in said company for five successive years, said exemption shall continue during the life of the member rendering such active service." The defendant served actively five successive years.

The exemptions under this and other private acts (passed usually, as is common knowledge, upon the motion of the members from the county in which each locality lies, and without scrutiny or opposition) became so numerous as to impair, often, the supply of good jurors. The General Assembly thereupon passed Revisal, 1957, which directs the County Commissioners to select the names of *"all such persons* as have paid all the taxes assessed against them for the preceding year, and are of good moral character and of sufficient intelligence. A list of the names thus selected shall be made out by the Clerk of the Board of Commissioners and shall *constitute the jury-list,* and shall be preserved as such.". To this sweeping clause, Revisal, 1980, adds the exemptions to be allowed, which are much fewer than those formerly allowed, even in the general law, and contains this item: "No *active* member of a fire company shall be required to serve as a juror." Wilmington, in 1897, adopted a paid fire department, and the defendant's company ceased its active service. The County Commissioners having found that the defendant was liable to jury duty under Revisal, 1957, and not exempt under Revisal, 1980, placed his name on the jury-list.

Revisal, 1957, is broad and succinctly prescribes what citizens shall be liable to jury duty, subject only to the exemptions set out in Revisal, 1980. This is a matter solely within legislative control, subject to change in the judgment of any succeeding Legislature. If the provision in the aforesaid act of 8 March, 1869, under which the defendant claims exemption from rendering jury service to his State is public in its nature, it is clearly repealed by Revisal, 5453: "All public and general statutes not contained in this Revisal are hereby

repealed, with the exemptions and limitations hereinafter
mentioned." If, however, it is a private act, it is not less
repealed by Revisal, 5458: "No act of a private nature,
unless in conflict with the provisions of this Revisal * * *
shall be construed to be repealed by any section of this Re-
visal." The exemption claimed by defendant under ch. 55,
Private Acts 1868, is directly in conflict with Revisal, 1957,
which directs the County Commissioners to place the names
of *all* tax-payers of good moral character, etc., on the list for
jury duty, the exemptions being stated in sec. 1980, which
does not exempt the defendant. It will be noted that this
repealing clause is radically different from sec. 3873 of The
Code, which provides: "No act of a private or local nature
* * * shall be construed to be repealed by any section of
this Code." The General Assembly had seen the inconven-
iences of this section, and the radical change of language in
Revisal, 5458, shows a clear intention to repeal all private
acts inconsistent with the provisions of the Revisal; language
could not be clearer.

The defendant contends, however, that the Act of 1869
was a contract between the fire company and the State and is
protected by the principles laid down in the *Dartmouth Col-
lege case.* Whatever may be said of the correctness or incor-
rectness of that decision (and very much has been said) the
inconveniences proved so great that this State, like most, if
not all others, has since inserted in its Constitution the fol-
lowing provision, Art. VIII, sec. 1: "Corporations may be
formed under general laws, but shall not be created by special
act except for municipal purposes and in cases where, in the
judgment of the Legislature, the object of the corporations
cannot be attained under general laws. *All general laws and
special acts, passed pursuant to this section, may be altered
from time to time or repealed."* The Constitution was
adopted 18 April, 1868, and if the exemption in the charter
of the Wilmington Fire Company, ratified 8 March, 1869,

was a contract, there was written into that contract, as a part of it, that the Legislature had a right to amend or repeal from time to time any and all rights thereby conferred.

But, in truth, independent of that constitutional provision, exemptions from military and jury and other public duties were never at any time contracts by which one Legislature could irrevocably sell, or give away, the right of the State to command the service of its citizens for public and governmental duties. Such exemptions were adjudged to be mere privileges, revocable by subsequent Legislatures, and were so held in all the States (except in one case in Missouri) in which the contention was raised, even prior to the incorporation into their respective Constitutions of the provision above quoted from the North Carolina Constitution.

"It has been generally held that the right of exemption from jury service is not a vested right, but a mere gratuity which may be withdrawn at the pleasure of the Legislature." 17 A. and E. Ency. (2 Ed.), 1177. Judge Cooley Const. Lim. (7 Ed.), 329 and 546, says: "The citizen has no vested right in statutory privileges and exemptions. Among these may be mentioned: exemptions from the performance of public duties upon juries, or in the militia and the like, exemptions of persons and property from assessment for the purpose of taxation, * * * exemptions from highway labor and the like. All these rest upon reasons of public policy, and the laws are changed as the varying circumstances seem to require; * * * the privilege of exemption might be recalled, without violation of any constitutional principle. The fact that a party had passed the legal age under an existing law, and performed the service demanded by it, could not protect him against further calls, when public policy or public necessity was thought to require it."

"Exemption from service on juries is always subject to legislative repeal, even as to persons who, by the performance of specified services, have earned an exemption under its provisions." *Dunlap v. State,* 76 Ala., 460. That case was exactly "on all fours" with this, the exemption from jury duty being claimed by virtue of services in a fire company for five years as prescribed in its charter. *Clopton, C. J.,* in a very able opinion quotes with approval from *Bragg v. People,* 78 Ill., 328: "It is impossible for the State to protect life, liberty and property without the aid of juries. The system is a vital part of the machinery of government. It is the undoubted duty of the legislative department to provide for the selection of jurors in such way as shall best subserve the public welfare. Of this, of course, it must necessarily be the judge, and may provide that for the time being, certain classes, by reason of what shall be deemed sufficient public considerations, shall be exempt; but to say that such exemption shall be perpetual, whatever may be the public necessities, would be to authorize one Legislature, by unwise legislation, to tie the hands of its successors, even to the extent of destroying the government"—citing many authorities, a few only of which we will quote.

In *Rust, ex-parte,* 43 Ga., 209, *Lochrane, C. J.,* holds that a general statute providing for jury service repeals all previous exemptions not found therein, and that an exemption previously conferred in the charter of a fire company upon its members is not a contract, but a privilege, revocable by any subsequent Legislature. Though a fireman had served the five years, provided in the charter, the exemption is "not a contract, but a mere privilege, and may be revoked by the Legislature at any time." *Beamish v. State,* 65 Tenn., 532.

"The duty of serving on juries is one of the inseparable incidents of citizenship, and all exemptions from such service (in that case for service in a fire company) are mere gratuities, revocable at the pleasure of any succeeding Leg-

islature, and are revoked by a general law, prescribing those subject to jury duty, without excepting those claiming exemption under prior local or general acts." *In re Scranton,* 74 Ill., 161. But the subject is most fully and conclusively discussed and the same conclusion reached in *Bragg v. People,* 78 Ill., 328. In that case the plaintiff had served seven years in a fire company, whose charter provided that such length of service should exempt from jury duty. The Court held that no Legislature can sell, or give, or bargain away, irrevocably, the sovereign right of the State to command the service of its citizens for military, jury, road or other public duty, and adds: "Services performed in the fire department can, by no fiction, be made to take the place of the man in the jury-box." There are other cases to the same purport as above.

The sole case to be found to the contrary is *In re Goodin,* 67 Mo., 637, which is based upon the ground that an exemption from jury duty is a contract and protected by the decision in the *Dartmouth College case.* If that decision could overbalance the uniform precedents to the contrary, it could not be authority here in view of the provision in our Constitution, above quoted, making all charters subject to repeal or amendment at the will of the Legislature. Indeed, in *Railroad v. Alsbrook,* 110 N. C., 145, this Court held that, independent of and prior to the adoption of that provision, the Legislature could not irrevocably grant or bargain away, even for a consideration, an exemption of property from taxation. For a stronger reason, the State could not permit one Legislature to confer a release of its right to call for the discharge of public duty by its citizens in the public defense, in the jury-box or elsewhere, irrevocable by a subsequent Legislature.

In *State v. Womble,* 112 N. C., 863, the exemption was sustained solely upon the ground that the local act conferring it was saved from repeal by sec. 3873 of The Code. This, as

142—39

we have already seen, is otherwise under the provisions of Revisal, 5458.

Affirmed.

WALKER, J., dissenting: It is impossible for me to assent either to the conclusion or to the reasoning of the majority. On both points involved in the case, I entertain an opinion different from that which has been delivered by the *Chief Justice* for the Court. In the first place, I do not think the statute under which the defendant claims exemption from jury service has been repealed by the Revisal. The rule is well settled that repeals by implication are not favored. *State v. Perkins,* 141 N. C., 797. The two statutes should be irreconcilable with each other before such an implication can arise, and when any fair construction will prevent a conflict between them it should be adopted. *State v. Massey,* 103 N. C., 348; *State v. Womble,* 112 N. C., 864. The Revisal, sec. 1980, simply provides that no *active* member of a fire company shall be required to serve as a juror. There is no express repeal here of any clause of exemption inserted in the charter of a fire company by prior legislation, and there is no necessary repugnancy between the two provisions of the law. If there is, in what does it consist? The exemption of *active* members of fire companies does not by any means imply that those who have once been active members for a sufficient length of time to entitle them to a permanent exemption shall no longer be entitled to the immunity which they have thus earned. Merely adding to the list of exemptions does not produce a conflict with a statute under which an exemption had accrued by reason of former active service for a series of years. It would not have this effect, even if the Revisal had provided that none but active members shall be exempt, as this would merely distinguish between active and honorary members of existing organizations. The use of the term "active members" implies, of course, that there are members

who are not active, otherwise it would have been sufficient to declare that all members of fire companies shall be exempt, without special reference to whether or not they are in active service, as they would all be active members if there is no such classification in the membership. It appears in this case that the defendant is not now a member of the fire company at all, active or inactive, as it had been disbanded, and a paid department has been substituted in the place of the former voluntary system for fire protection. How the inclusion of active members in an exemption can have the effect to repeal a law under which an exemption has already been vested, I am unable to see. It will be observed that there are no negative words used in the Revisal, so as to exclude the exemption contained in the clause of the charter just mentioned, but only the granting of an exemption to a specified class which they did not before possess under the general law, but which was conferred only, as to some of them, in certain private charters, and that was merely a revocable grant, and not an irrevocable grant of exemption as is the one claimed by the defendant. The exemption allowed under the Revisal, sec. 1980, was clearly intended to apply to a class of persons who never enjoyed such an immunity before its enactment, and not to one protected by prior legislation and in whose favor there was an existing right of exemption. This is apparent from the phraseology of that section. The provision of the Revisal is plainly cumulative and not revocatory. Nor does sec. 1957 of the Revisal give any color to the claim that the Legislature has taken away all existing exemptions. That section only requires the Commissioners to prepare a list of all persons having certain prescribed qualifications, and to exclude therefrom persons who are disqualified, such as those who have removed from the county, or who are dead (sec. 1961), but not those who are exempt from jury service. They do not even strike off those who have suits pending and at issue, but return their names to Box No. 1, when they are

drawing jurors to serve at a court.  Sec. 1960.  There is a vast difference between a disqualified and an exempted juror.  The exemption is but a privilege, personal to the juror, and he may serve, even if objected to on the ground of the exemption, unless he insists upon his privilege.  He may waive it, and when he does, he is as much qualified as if the exemption had never existed.  His name properly goes upon the list, not only because he is a qualified juror, but because the Commissioners are not presumed to know of his exemption, and if they were informed of it, they are not presumed to know that he will avail himself of it when called to sit in the box, for, as I have said, he may then forego the privilege and agree to serve.  The argument drawn from sec. 1957 as to preparing the list of jurors would just as well apply to exemptions of practising physicians and others, under sec. 1980, as to those under existing charters.

There is, therefore, nothing in the Revisal which conflicts with the clause of exemption in the charter of the fire company, or which manifests any purpose to repeal it, and we should lean to this view, because, as said by a Court of high authority, in a like case, the opposite interpretation of the law would disclose bad faith, and, "if possible, we should give such a construction to the act of the Legislature as will relieve the State from such an interpretation."  *Red Rock v. Henry,* 106 U. S., at p. 604.  And in another case, also upon a question of like kind, it was said that we should presume an intention, on the part of the State, to keep and observe her promises consistently with good faith, for to presume otherwise would be to impute to her an insensibility to the claims of morality and justice, which nothing in her history warrants.  *Broughton v. Pensacola,* 93 U. S., 266; 26 Am. and Eng. Enc. (2 Ed.), pp. 646 and 661; Lewis' Suth. Stat. Constr. (2 Ed.), secs. 267 and 488.  The mind of the Legislature is presumed to be consistent, and it must also be presumed that the Legislature never intends an injustice, or to

disregard its own agreements, or to work private hardship. If a statute, therefore, is ambiguous or doubtful, or fairly open to more than one construction, that one should be adopted which will avoid such results as those indicated, as the Legislature should not be presumed to intend a wrong in the absence of explicit language expressing that intention. These are elementary principles of construction, it is said in Black on Interpretation of Laws, pp. 98 to 101, secs. 44 and 46.

Before I can assent to the proposition that the State has repudiated a solemn promise of exemption, after having received the full consideration thereof in public services, language will be required more explicit and convincing than any the Legislature has yet used, and reasons and arguments more persuasive than any which have yet been advanced in support of such a position. The State, in my opinion, has done no such thing, and the Legislature did not intend to commit her to any such policy, but, on the contrary, it was the purpose to recognize and confirm existing exemptions.

But there is another and more serious question involved in this case, which relates to the power of the Legislature thus to destroy a vested right or to impair the obligation of its contract. In my opinion it has no such power. It is argued that the State cannot bargain away its right to require the citizen to perform jury service, such a service being essential to the very preservation of the State. The deduction from this premise is that a sovereign right of such vital importance is not the subject of contract. Let us see how this is. If I am able to demonstrate that a sovereign right much more essential to the existence of the government than that of requiring the citizen to serve as a juror has been parted with by exempting persons or corporations from its exercise, not for a limited term, but forever, and that such an exemption has been sustained as being within the legislative power, and as irrevocably binding on the State, it must be admitted

that the exemption now in question by the same token must be a lawful exercise of that power and equally obligatory.

The Constitution forbids the granting of hereditary emoluments, privileges or honors, and also perpetuities and monopolies, as being contrary to the genius of a free State, and such as should not be allowed. Art. I, secs. 30 and 31. But by Art. I, sec. 7, it is expressly provided that "no man or set of men are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services." It is clearly implied here that for public services rendered the State, a privilege may be granted in return, and there is no restriction as to its nature or extent. A privilege is said to be a particular or peculiar benefit enjoyed by a person, company or class beyond the common advantages of other citizens—an exceptional or extraordinary exemption or an immunity held beyond the course of the law. And again, it is defined to be an exemption from some burden or attendance, with which certain persons are indulged, from a supposition of the law that their public duties or services, or the offices in which they are engaged, are such as require all their time and care, and that, therefore, without this indulgence those duties could not be performed to that advantage which the public good demands. Black's Dictionary, p. 941; 1 Pin., 118. These approved definitions show clearly that the exemption here claimed is within the meaning of the word "privilege," as used in the Constitution, which may be conferred in consideration of public services. Indeed, this Court has expressly held, in cases just like this one, that the Legislature may grant such an exemption. *State v. Hogg,* 6 N. C., 319; *State v. Williams,* 18 N. C., 372; *State v. Whitford,* 34 N. C., 99; *State v. Womble,* 112 N. C., 862. In *State v. Willard,* 79 N. C., 660, the very exemption granted by the charter in question was sustained as within the power of the Legislature to grant, and the only point made was as to its true construction and the extent of

the exemption in its application to the different kinds or classes of jurors.

In *Railroad v. Alsbrook,* 110 N. C., at p. 145, this Court (by *Clark, J.*) says: "The right of taxation is the highest prerogative of sovereignty. Its exercise is necessary to the very life and existence of the State. Its possession marks—regardless of the nominal form of government—its real nature, whether republican, monarchical or aristocratic. It is the power of the purse to which the power of the sword is a mere sequence," and I venture to add, to which all other governmental powers are practically subordinate, because upon it they are dependent for their continuance. It is, if anything, the supreme prerogative power of sovereignty, and absolutely essential to the existence of government in any form. And yet this, the highest power of the sovereign State, has been held to be the subject of contract, and any agreement based upon a sufficient consideration, such as public services rendered, by which the State exempts the citizen or a corporation from taxation, is valid and binding and is within the protection of the contract clause of the Federal Constitution. This principle was announced in a case decided otherwise by this Court, but which was reversed in the Supreme Court of the United States upon a writ of error. *Railroad v. Reid,* 13 Wall., 264 and 269. In that case the Court said: "If, however, the contract is plain and unambiguous, and the meaning of the parties to it can be clearly ascertained, it is the duty of the Court to give effect to it, the same as if it were a contract between private persons, without regard to its supposed injurious effects upon the public interests. It may be conceded that it were better for the interests of the State that the taxing power, which is one of the highest and most important attributes of sovereignty, should on no occasian be surrendered. In the nature of things the necessities of the government cannot always be foreseen, and in the changes of time the ability to raise reve-

nue from every species of property may be of vital impor-
tance to the State, but the courts of the country are not the
proper tribunals to apply the corrective to improvident legis-
lation of this character. If there be no constitutional re-
straint on the action of the Legislature on this subject, there
is no remedy, except through the influence of a wise public
sentiment, reaching and controlling the conduct of the law-
making power." That case has been approved by innumera-
ble decisions since made, and is recognized as settling the
doctrine therein stated. Indeed, the general principle had
been thoroughly well established long before it was reiterated
and applied in that case. *Dartmouth College v. Woodard,*
4 Wheat., 518; *New Jersey v. Wilson,* 7 Cranch., 164; *Jef-
ferson Bank v. Kelly,* 1 Black, 436; *Railroad v. Tenn.,* 153
U. S., 486; *Fletcher v. Peck,* 6 Cranch., 87; *Bank v. Knoop,*
10 Howard, 389; *Pawlet v. Clark,* 9 Cranch., 292; *Terrett
v. Taylor, ibid.,* 43; *Bank v. Billings,* 4 Peters, 514; *Mills
v. Williams,* 33 N. C., 558; *Bank v. Bank,* 35 N. C., 75;
*Attorney-General v. Bank,* 57 N. C., 287; *State v. Petway,*
55 N. C., 396. See, also, the later case of *Tomlinson v. Jes-
sup,* 15 Wall., 454. Where there is such a stipulation, it is
entitled to a sensible and reasonable construction, so as to
effect its obvious purpose, and should be regarded as a con-
tract if it appears to have been so intended by the parties. *In-
surance Co. v. Debolt,* 16 How., 416, 427; *Bank v. Edwards,*
27 N. C., 516; *Gordon v. Appeal Tax Court,* 3 How., 148;
*House of the Friendless v. Rouse,* 8 Wall., 430. Thus far I
have referred to exemptions or other privileges conferred,
which are not revocable by the terms of the grant. For ex-
ample, the provision in the Revisal exempting active members
from jury duty is revocable, because it is not given for any
definite time; and even in the case of the exemption now
under consideration, it may be that it was within the power
of the Legislature to have revoked it at any time before the
period of five years had expired. The continuance of such

exemptions being subject to the will and pleasure of the Legislature, the laws conferring them do not fall within the class of legislation which gives to them the character of contracts, or imparts to them the qualities and protection of vested rights. But all the best considered authorities hold that where the exemption is granted perpetually for a consideration, such as public services to be rendered for a definite time, and the services have been performed and the requirement of the law fully complied with, so that the agreement has been actually consummated and fully executed on both sides, it becomes an inviolable right, within the meaning and protection of the contract clause of the Constitution. *Salt Co. v. East Saginaw,* 13 Wall., 373. Even where, as by our Constitution (Art. VIII, sec. 1), the power is reserved to alter or repeal the charters of private corporations, the exercise of this power cannot interfere with rights already vested under the charter; it cannot undo what has already been done, nor can it unmake contracts already made, but its operation will be confined to the future. *People v. O'Brien,* 111 N. Y., 1; *Railroad v. United States,* 99 U. S., 700; *Red Rock v. Henry,* 106 U. S., 604; *Salt Co. v. East Saginaw, supra; People v. Auditor,* 9 Mich., 134. This Court so held in *Smathers v. Bank,* 135 N. C., 418.

As there is no subject over which it is of greater moment for the State to preserve its power than that of taxation, and as it has been settled that the State may irrevocably part with this power in favor of a particular person or corporation, with much greater reason (*a fortiori*) may it exempt a citizen perpetually from jury duty for a sufficient consideration moving to the public in the way of services. This follows logically and inevitably from the other proposition and cannot be resisted as a conclusion to be legitimately drawn from it. If the highest power of sovereignty can be bargained away, that which is of a lower grade, and is dependent upon it for existence, must be equally subject to alienation, unless

we deny the truth of the axiom that the greater includes the
less. This view has been taken in regard to a mere bounty
which had been earned according to the terms of the legislation
conferring it. *People v. Auditor,* 9 Mich., 134; *Montgomery
v. Kasson,* 16 Cal., 189; *Salt Co. v. East Saginaw,* 19 Mich.,
259 (*s. c.,* 13 Wall., 373). The same principle was adopted
and held to apply to a case precisely like this one in every
respect, in *Ex-parte Goodin,* 67 Mo., 637, by a unanimous
Court in a well-considered opinion by *Chief Justice Sher-
wood,* and it was so held notwithstanding there was a reserved
power of amendment or repeal residing in the Legislature.
So that case has met and answered every point now urged
by the State, except the one as to the actual repeal of the
provision of the charter which confers the exemption. In
the opinion of this Court it is said that the Missouri decision
cannot be accepted as authority by this Court, because of the
power reserved to the Legislature in the Constitution of our
State to amend or repeal charters. This is an inadvertence,
for even a cursory reading of that case will show that the
same power existed in the Legislature of Missouri, as it is
expressly mentioned and held not to change the result. The
case of *Railroad v. Alsbrook,* 110 N. C., 145, which is cited
by the Court in this case, does not decide that an exemption
from taxation cannot be irrevocably granted, but only that
the right there claimed did not extend to a certain class of
property, as it was not clearly expressed in the charter of the
company that it should. *Railroad v. Alsbrook,* 146 U. S.,
279. But that such a power does exist is decisively deter-
mined by a multitude of cases. *Salt Manufacturing Co. v.
East Saginaw,* 80 U. S. (13 Wall.), 373, where the author-
ities are collected by *Justice Bradley,* including among them
*Railroad v. Reid,* 80 U. S. (13 Wall.), 264 and 269. The
Court in the latter case, as I have said, reversed the decision
of this Court, holding the contrary doctrine. Besides, it was
said in *Railroad v. Alsbrook,* 146 U. S., 279, that if this

Court had decided in the same case, when before it, that no such power of exemption could exist, it would have been erroneous, and the decision in that case was affirmed only because it was held therein that the exemption did not apply to the railroad's branches, but only to its main line, and that was the entire scope of the decision.

I have cited copiously the cases in the Supreme Court of the United States, because such questions as the one we now have under consideration must ultimately be adjudicated there and its decisions are therefore controlling. The authorities cited to sustain the decision of the Court in this case are squarely opposed to the doctrine as laid down by that supreme tribunal, and therefore should not be entitled to any weight as precedents with us, while the case from Missouri is directly in line with that doctrine and in perfect harmony with the decisions of the highest Court having jurisdiction to finally and authoritatively settle the law, so far as it relates to the question herein involved.

If the superior and sovereign power of taxation can be permanently relinquished in favor of an individual or of a corporation, why not the inferior and less important one under which the citizen may be compelled to perform jury service? The former power should no more be impaired to the detriment of the public than the latter one by giving such exemptions, and the power of compelling persons to attend at the courts for jury duty would be little or nothing to the State if there is no money in the Treasury to sustain the government. The possession of the power of taxation is therefore not only essential, but a condition precedent to the exercise of the other power. You cannot put jurors on the panel, or in the box, without the money to provide for the necessary governmental machinery, of which the courts are a part.

The government, it is true, was not organized merely for the purpose of exercising the power of taxation, yet it was one of the extraordinary powers contemplated, as much so as

any other, because the government could not exist without it. The question is not for what purpose did we form our government, but what are its essential functions. I may admit that if the State cannot perpetually exempt from taxation, she cannot give a permanent exemption from jury service; but it is inconsistent and illogical, it seems to me, to affirm, the right in the one case and deny it in the other. If either of the powers is inalienable, then the other must needs be so. No ingenious or subtle argument can explain why the reasons which justify the right of alienation in the one case do not also justify it in the other.

While the impolicy of exempting jurors perpetually may be conceded, it is not for me to decide that it is unwise, that being a matter solely within the cognizance of the Legislature. Although I may condemn the law as impolitic, my conviction is that it is perfectly valid, and binding on the State. A right to the exemption having become vested by the performance of the services for the stipulated period, it could not be divested by State action. There is no evidence before us, and no suggestion can well be supported by actual proof, that the supply of competent jurors is about to be exhausted by reason of statutory exemptions such as this one. Indeed, the contrary appears in this case, for we are informed that the voluntary fire departments are gradually giving place to the paid departments, the members of which are compensated for their services by the municipalities of the State in money, and not by way of exemption from jury duty, as was the case with volunteer associations.

It must not be supposed that I am attempting, by this opinion, to vindicate solely the right of the defendant in this case. The question involved is more far-reaching than the mere acquittal of one individual, even upon the charge of unlawfully refusing to do service which, by the law, as heretofore settled, he is not bound to render, though that is a sufficient reason for fully discussing the matter. The real signifi-

cance of the case is revealed when we consider that the principle, as herein declared, will be recorded as a precedent and by so much impair, if it does not seriously jeopardize, the constitutional rights of the citizen in other cases involving more serious consequences.