Wilson, Trustee, &c., v. Jenkins, Pub Treas'r, and Reilly, Auditor.

H. P. C WILSON, Trustee, &c., v. D A JENKINS, Public Ti..... .r and JOHN REILLY, Auditor, &c.

The General Assembly has absolute control over the finances of the State ——— the Public Treasurer and Auditor being mere ministerial officers, bound to obey the orders of the General Assembly:

*Hence*, the Courts have now not power to compel, by *Mandamus*, the Public Treasurer to pay a debt, which the General Assembly has directed him not to pay, nor the Auditor to give a warrant upon the Treasurer, which the General Assembly has directed him not to give, unless the act of the General Assembly be void, as violating the Constitution of the United States, or of this State.

The act of the 23rd November,[*] 1874, repealing the act of the 19th day of August, 1868, providing for the payment of the public debt, does not impair the obligation of contracts; and under its provisions, the Public Treasurer was justified in refusing to pay the coupons of bonds issued before the war, although payment thereof had been demanded and action brought, which was pending when the said act passed.

(*Dixon* v. *Pace*, 63 N. C. Rep. 603, cited and approved.)

This was a CIVIL ACTION, for a *Mandamus* to compel the Auditor of the State to audit, and the Public Treasurer to pay certain coupons, heard before *Henry, J.,* at the Fall Term, 1874, of Wake Superior Court.

---

[*]Note.—The following is the Act of 23d November, 1874.

Section 1. *The General Assembly of North Carolina do enact,* That an act entitled "An Act to provide for the payment of the interest of the lawful debt of the State," ratified the 19th day of August, 1868, be, and the same is hereby repealed.

Sec. 2. That the Treasurer shall not pay or discharge any claim for interest upon any portion of the bonded debt of this State, except as hereinafter provided for by law.

Sec. 3. That the Auditor shall not audit, or recognize any claim for principal or interest upon any portion of the bonded debt of this State heretofore m de or pretended to be made by authority of this State, except as hereafter provided for by law.

Sec. 4. That any money now in, or which may be paid into the Treasury, on account of Special Taxes, heretofore levied for the payment of the interest on bonds or pretended bonds of this State, is hereby transferred and appropriated to the "general fund."

Sec. 5. That this Act shall take effect from its ratification.

Ratified this, the 23d day of November, 1874.

The material facts of this case are stated in the opinion of the Chief Justice.

On the trial below, his Honor gave judgment for the defendant. From this judgment the plaintiff appealed.

*J. W. Graham*, for appellant.
*Attorney General Hargrove* and *Smith & Strong*, contra.

PEARSON, C. J. Our labor in deciding this case is much lightened by the discussion of *Shaffer* v. *Jenkins*, and the opinion delivered in that case at this term.

The General Assembly has absolute control over the finances of the State. The Public Treasurer and Auditor are mere ministerial officers, bound to obey the orders of the General Assembly.

It follows that the Courts have no power to compel, by *Mandamus*, the Public Treasurer to pay a debt which the General Assembly has directed him not to pay, or the Auditor to give a warrant upon the Treasurer which the General Assembly has directed him not to give, unless the act of the General Assembly be void as violating the Constitution of the United States or of this State.

Our case presents these facts, briefly set out. The Constitution of 1868 orders the General Assembly to provide for the prompt payment of the interest on the public debt. Carrying out this order, the General Assembly in 1868, directed the Public Treasurer to pay the interest on the lawful debt of the State out of any money not otherwise appropriated. The amendment to the Constitution in 1874 repeals this provision of the Constitution. Carrying out this amendment, the General Assembly, in November, 1874, repeals the act of 1868, and enacts that the Public Treasurer shall not pay the interest of the bonded debt of the State except as may be hereafter provided for, and that the Auditor shall not audit or recognize any claim for interest on the debt of the State ; thus following the notions of the people in adopting the Constitution of

1868 and the amendment in 1874. In March, 1874, the plaintiff held a large amount of the coupons on bonds of the State, and demanded payment of the Public Treasurer, who refused to pay on the ground that he had no funds not otherwise appropriated; on the further ground that should such funds be in hand he would not be at liberty to pay all of the funds to the plaintiff and leave the other creditors wholly unpaid, but would divide the fund *pro rata*; and on the further ground that the claims of the plaintiff had not been passed on by the Auditor.

The plaintiff then demanded of the Auditor that he should pass upon his debts and give him a warrant upon the Public Treasurer. To this demand the Auditor replied he had no right to interfere, whereupon the plaintiff again demanded payment of the Public Treasurer, stating that he was advised that as his debt was liquidated and was evidenced by a plain obligation to pay a specific sum, there was no occasion for a warrant of the Auditor. The Public Treasurer again failed to pay, and this action was commenced. To avoid confusion we will, for the present, put the fact that the plaintiff's action was pending at the date of the passage of the act, November, 1874, aside, and consider the legal effect of the act of 1868, directing the Public Treasurer to pay the interest, and the act of 1874, directing the Public Treasurer not to pay such interest and the Auditor not to give his warrant for the payment of the same.

It was said on the argument, the act of 1874 impairs the obligation of the contract. What contract? The original contract, evidenced by the State bonds and coupons, remains intact, and is not at all impaired; the terms are not changed and the remedy existing at the execution of the bonds and coupons are now precisely the same. The act of 1868, directing the Treasurer to apply any moneys remaining in hand, not otherwise appropriated, to discharge interest upon the lawful debt of the State, makes no new contract, nor does it add to the original contract—it is, in no sense of the word, a contract; it is an *ex parte* action of the General Assembly, for which the public

creditors paid no consideration and in which they took no part. It is simply an order of the General Assembly, given to its ministerial officer, which it had a right to countermand at any time before it was executed. *Dixon* v. *Pace*, 63 N. C. Rep. 603, is in point. One Evans owed Dixon $250; Evans sent to Pace, his agent, $250, with directions to pay it to Dixon; Pace saw proper to apply it to other debts, and his action was ratified by Evans. It is held that Evans had a right to countermand his order at any time before Pace had paid it over to Dixon—for Dixon had done nothing to vest in him a right of action for the money against Pace and his condition was not changed; he had paid no consideration, and must depend on the contract with Evans.

In *Charles River Bridge, Co.* v. *Warren Bridge*, 11 Peters, 581, Justice MCLEAN says: "After a careful examination of the question adjudged by this court, they seem not to have decided in any case, that the contract is impaired, within the meaning of the Constitution, *when* the *action* of the *State has not* been on the *contract*." Here the action was not on the contract, but was collateral, and was merely the expression of the volition of the General Assembly in respect thereto, which, as we have seen, could be changed to conform to the varying will of the people, as expressed by the amendment to the Constitution at any time before such volition had been carried in effect.

Had the plaintiff received the money, he would have acquired a vested right beyond the reach of any amendment to the Constitution and of the act 1874; for if the General Assembly had afterwards passed an act requiring him to pay back the money and making his failure to do so a misdemeanor, the statute would have been void as *ex post facto*. But it is said the plaintiff would have got the money but for the wrongful refusal of the executive officer to obey the act of 1868. That may be so, but still he did not get the money, and a "miss is as good as a mile."

We come now to consider how far the fact that he had made

a demand upon the Treasurer and Auditor and had commenced an action, which was pending and actually being tried at the time the act of November, 1874, was passed can affect the question. We are not able to see any principle upon which that circumstance can make a difference. He acquired no right of property, nor did he ever acquire a lien by the pending of his action to any money in the Treasury. He had not changed his condition as a creditor of the State or surrendered any right, and still has his contract with the State and his remedy unimpaired just as it was when the contract was entered into. All that he can complain of, is that the people have seen proper to amend the Constitution, and in accordance thereto the General Assembly has repealed the act of 1868, under which he had hoped to have his coupons satisfied.

Mr. Graham also took the position that assuming the act of 1874 not to be unconstitutional, and that it repealed the act of 1868, under which this action was brought, the repeal did not affect his case by reason of the provision in chapter 108, section 1, Battle's Revisal; " the repeal of a statute shall not affect any suit brought before the repeal, for any forfeiture incurred or for the recovery of *any rights accruing under such statute*." What right accrued to the plaintiff under the act of 1868 ? None based on contract as we have seen ; at most a mere expectation that his money would be paid under an act which the General Assembly had passed in obedience to the Constitution and as an act of justice; but the people had power to amend the Constitution, and the General Assembly had power to repeal the act in accordance with the amendments ; so the plaintiff had acquired no legal right under the act of 1868, within the meaning of the statute referred to. If he had, the repealing act of 1874, being directly called for by the amendment of the Constitution, would override a general provision of the kind. A complete answer to the position, however, is that the act of 1874 not only repeals the act o 1868, but in section 2 and 3, in so many words, forbids the Treasurer from paying, and the Auditor from recognizing, any

claim for principal or interest of the bonded debt of the State except as may be hereafter provided for by law. There is no error.

PER CURIAM.                                Judgment affirmed.