## COPPLE v. COMMISSIONERS.

(Filed April 18, 1905).

*Liability of County for Care of Poor—County Superinten-dant of Health—Delegation of Duties—Smallpox Patient.*

1. Under Sections 707 (21) and 3540-1 of the Code, imposing the general duty on County Commissioners to provide for the poor, in order to make a binding pecuniary obligation on the county, there must be an express contract to that effect, or the service must be done at the express request of the proper county officer or agent.

2. A County Superintendent of Health has no right to delegate the performance of his official duties to others, so as to give his employees the right to make their services a county charge.

3. Under the act of 1893, chap. 214, sec, 9, providing that contagious diseases shall be promptly quarantined by the County Superintendent of Health, the services rendered by plaintiff in removing a person afflicted with small pox to a pest house, taking his meals to him and attending to him continually during his sickness, is a legitimate county charge where the patient is insolvent and the services were rendered by the direction of the Superintendent of Health.

ACTION by T. M. Copple against the Board of Commissioners of DAVIE County, heard by *Judge Charles M. Cooke* and a jury at the Fall Term, 1904, of the Superior Court of DAVIE County, on appeal from a Justice of the Peace.

The facts are as follows: Plaintiff having presented his account to the Board of Commissioners, the defendants, for services rendered an insolvent small-pox patient, and for other items, and payment having been refused, instituted this action before a justice of the peace, on 20th. of March 1901, to recover $83.87, the amount demanded. On the trial before the justice the plaintiff obtained judgment for the amount. On appeal he recovered to the amount of $52.,

being a portion of his account. The items of the account as originally presented are as follows:

Four days @ $1. per day,.... .... .... .... $ 4.00
Removing Henry Dry to pest house,.... .... ... 5.00
Twenty-three days @ $2. per day,.... .... .. 46.00
Ten days @ $1.75 per day,.... .... .... .... 17.50
Thirty-five vaccinations @ 32½c each,.... .... 11.37

                              Total.... .... ...`..$83.87

Dated May, 1900. Signed T. M. Copple.

The defendants denied any indebtedness and in their answer set forth the defense that the Board of Commissioners are not liable in any manner for any part of the account; and second, that the Board has never at any time employed the plaintiff to do anything, either professional or otherwise, whereby the county of DAVIE should in any way be responsible to plaintiff for the payment of any sum whatever.

On the trial in the Superior Court the following evidence was offered: The plaintiff in his own behalf testified that he was a regular practicing physician in the County of DAVIE and a member of the county Board of Health and lived at Cooleemee, a cotton mill village about seven miles from the town of Mocksville; that he was called to see one Henry Dry, who was sick, and upon examination plaintiff pronounced his disease smallpox; that he at once notified Dr. James Mc Guire, who was the county superintendent of health, and who lived at Mocksville; that Dr. McGuire came down to Cooleemee and agreed with plaintiff that Dry had smallpox and decided that he must be removed and isolated. Dry was at this time in the house of Mr. Meisenheimer, who had a family. At the suggestion of some employee of the Cooleemee Cotton Mills that the company had had a house built on the outskirts of the village for a pest house, and that if Dr. McGuire would order the patient removed there and turn him over to the plaintiff for treatment, it would be

more convenient and cheaper for the county, Dr. McGuire requested plaintiff to remove the patient to said house and take charge of the case and continue to treat him, which plaintiff did.   That there was no one else to be found who was immune, and who would remove and wait on the sick man. That plaintiff took his own horse and buggy and removed Dry to the pest house and visited and treated him professionally and carried his meals to him three times a day. That Dry was insolvent and unable to pay anything and plaintiff could not procure any one who was immune and who would go and wait on the small-pox patient and plaintiff had to do so himself.   That the house of Mr. Meisenheimer was quarantined by Dr. McGuire and afterwards all the territory of Cooleemee, by order of the Board of Commissioners of DAVIE County, which order was shown from the records of the defendants and a copy of which will be attached as a part of this case—"Exhibit A".   Plaintiff testified that he performed the services sued for in his account, duly sworn to and that the prices charged were reasonable, just and usual for such services and that no part of the same has ever been paid, though the account has been presented to the defendants and payment asked by him.

Dr. James McGuire, witness for the plaintiff, testified that he was Superintendent of the Board of Health for the county of DAVIE and at the time referred to by plaintiff he received a phone message to come to Cooleemee, a distance of about seven miles from Mocksville, the county seat of DAVIE, to see a small-pox patient; that he went and met Dr. T. M. Copple, the plaintiff, at Mr. Meisenheimer's house, and examined Henry Dry and found that he had a genuine case of small-pox.   That the situation was discussed.   That the defendant had a pest house built at the county home some three miles west of Mocksville, but the same had never been used.   It was mentioned by some one, perhaps Mr. Terrell, superintendent of Cooleemee Cotton Mills, that the company had erected

138——9

a house on its lands outside of the mill premises for such purposes. That it was necessary, witness thought, to quarantine Mr. Meisenheimer's house and to have Henry Dry removed to the pest house. He concluded it would be more convenient and cheaper to the county to have the patient removed to the latter pest house and requested the plaintiff to do it and take charge of the case, which plaintiff did. Witness also testified that after this he made several visits to said patient alone and also in company with the plaintiff, whose services he requested; fumigated the Meisenheimer house and received pay from the defendant for his services, but nothing for the services of plaintiff, which were not included in witness' charges. That witness received $3.50 for each visit made by himself, being fifty cents a mile. The letter of witness to plaintiff requesting plaintiff to meet him at Mr. Meisenheimer's house and help fumigate the house was shown witness and identified by him and put in evidence and a copy of which was attached to the record as "Exhibit B".

Among other things the court charged the jury as follows: If they believed the evidence it was the duty of the county to try to stop the spread of the disease of small-pox and to have the house of Meisenheimer quarantined and if necessary to have Cooleemee territory quarantined, and if they should find that Dr. McGuire thought it best to have Henry Dry removed to the pest house, and that it would be cheaper and more convenient to have him removed to the house of the Cooleemee Cotton Mills instead of the county pest house several miles away, as was suggested, that the defendant would be liable therefor and that the jury could allow the plaintiff whatever sum they might find was a fair and reasonable compensation for the services rendered. That if they should find that there was no one immune, or from any other cause the plaintiff could not get any other person to remove the patient, and he had taken his own horse and buggy and carried the patient to the pest house, and there cared for him

and treated him and carried his meals three times a day to him they could allow the plaintiff whatever sum they should find was a fair and reasonable compensation for such services as he rendered. That the statute by implication gave Dr. McGuire the power and authority to have the patient removed and cared for and the defendant, in law, is liable for a just and reasonable sum. But as the plaintiff failed to show that Mr. Meisenheimer was not able to pay for fumigating his house, you will not allow the plaintiff anything for that and the defendant is not liable for vaccination charges in said account and you will not allow the plaintiff anything for that.

Under the charge on the general issue the jury answered that the defendants were indebted to the plaintiff in the sum of $52. There was judgment for this amount and the defendants excepted and appealed.

*Jacob Stewart* and *E. L. Gaither,* for the plaintiff.
*T. B. Bailey* and *A. T. Grant, Jr.,* for the defendants.

HOKE, J., after stating the facts. So far as municipal obligation is concerned it is accepted doctrine that the care and support of the indigent and infirm is a matter of statutory provision. In *Smith v. Coleraine,* 9 Metcalf, 492, it is said by *Chief Justice Shaw,* "It has been too often decided to be now questioned that the liability of towns to support poor persons is founded upon and limited by statute and is not to be enlarged or modified by any supposed moral obligation." Where a statute imposes such duty on a county in general terms, leaving the method and extent of relief to the judgment and discretion of local officers and agents, in order to make a binding pecuniary obligation on the county, there must be a contract to that effect, express in its terms, or the service must be done at the express request of the officer or agent charged with the duty and having the power to make contracts concerning it. The statutes of our State on this

subject are of this character. By section 707, sub-division 21, and section 3540 of The Code, the county commissioners are directed to provide for the maintenance, comfort and well ordering of the poor.

By section 3541 it is provided that paupers who may become chargeable to the county, shall be maintained at the county poor house, or at such place or places as the board of commissioners may agree upon. The general duty is here imposed of providing for the poor; the place, method and extent of relief are vested in the judgment and discretion of the county commissioners. Although the person may be a proper subject of county charge, any one who officiously provides for such person cannot recover of the county the amount of his outlay.

Where the county commissioners have provided a poor house, styled now, a home for the aged and infirm, they have the right to require that all persons who are cared for at their expense shall be placed in the house which they have provided for the purpose.

Authorities are numerous to the effect that counties cannot be held responsible for obligations of this kind unless there has been a contract made by the proper county officers in express terms, or unless the services are rendered by their request and under circumstances from which a contract may be inferred. *Salisbury v. City,* 44 Pa. St., 303; *O'Keith v. City,* 145 Mass., 115; *Patrick v. Town,* 109 Iowa 342. In *Salisbury v. City,* in holding that a claim without such express contract could not be maintained, the court said: "To hold otherwise would be to impose unknown and unexpected claims in vast numbers on the county treasury and to allow the jury, instead of the guardians of the poor, to determine the amount of public expenditure.

In *Patrick v. Town, supra,* it is held that "where the law imposes on a municipality the duty of maintaining poor persons, and designates officers thereof to act in its behalf in

the performance of such duty, their mere neglect will not operate as an implied request to a private party to supply the needy person's wants, upon which such party can act and hold the municipality liable as upon an implied contract." And further, "the statute requiring each town to support poor persons in certain cases, and the supervisors to see that such support is furnished, does not permit a private party to aid or relieve such a person at the expense of the town without a contract to that effect made between him and such supervisors, or a majority of them."

The court is also of opinion that the County Superintendent of Health has no right to delegate the performance of his official duties to others, certainly not so as to give his employees the right to make their services a county charge. The office of Superintendent of Health is one of trust and responsibility. Such Superintendent is paid a salary pursuant to the statute, at that time fixed by the Board of Commissioners, and they have the right to expect and require that he will perform the duties for which he is paid. It is not necessary however to question either of these wise and salutary principles in order to uphold the charge of the court in the present case, and support the verdict and judgment in plaintiff's favor. This, we think, is a case of emergency expressly provided for by statute, giving the County Superintendent of Health the power to impose this charge upon the county as to insolvents to the extent here allowed. By the statute of 1893, ch. 214, section 9, it is provided that quarantine shall be under the control of the County Superintendent of Health, who shall see that diseases specially dangerous, as small-pox, diptheria etc., shall be promptly quarantined and isolated within twenty-four hours after the case is brought to his knowledge and in case of death or recovery, there shall be disinfection, etc. The expense of the quarantine shall be borne by the householder in whose house the case occurs if he is able, otherwise by the city, town or

county in which he resides. The failure of the County Superintendent of Health to perform the duties imposed in this section shall be punished etc, etc. This power of quarantine, to make it efficient, extends not only to the house, but to the removal and isolation of the person suffering from the disease and the expense of such removal and the care and maintenance of the patient after the removal, to an amount that is reasonable and necessary, where the patient is insolvent and when incurred under the contract of the Superintendent of Health is a legitimate county charge.

This statute has never been repealed so far as the court can discover. It was certainly in force when this service was rendered and if the plaintiff's right had become absolute, no subsequent repeal could invalidate it. Code Sec. 3764.

According to the undisputed evidence in the case, Henry Dry had a genuine case of small-pox and was insolvent. To prevent the spread of the disease, in the judgment of the officer who was given control of the matter, it was necessary to remove and isolate the patient. This was done by removing him to a pest house already provided, near to the place, and where an attendant, immune, and ready and willing was at hand to render proper and necessary services. This plaintiff carried the patient to the pest house himself, took his meals to him three times a day, and attended to him continually during his sickness when no one else could be found to do it, at the request and by the direction of the Superintendent of Health. This was no delegation of that officer's duties. The Superintendent did attend the patient. He was performing the duties imposed upon him by statute and this was a case where the employment of help was necessarily contemplated and authorized. *Bank v. Bank,* 75 N. C., 534.

It cannot be suggested for a moment that the power of the Superintendent was exhausted when he had the patient removed and that the statute contemplated that he was to be

left without food or attendance. There was no abdication of his office by the Superintendent. On the contrary, in providing for the care and attendance that officer was carrying out his duty as prompted by every instinct of humanity, and sanctioned by the express provision of a wise and merciful law.

It will be noted that the charge of His Honor expressly excludes from the plaintiff's account the item for 35 vaccinations made for the Superintendent on other patients, this being a charge for work strictly professional and an official duty incumbent on the Superintendent himself, and refers the question for the jury to decide as to what was a fair and reasonable compensation for the other service rendered. Here then existed every fact required to make this valid charge in accordance with the doctrine as stated,—a duty imposed by statute and services incident and necesssarily rendered at the request of the officer in charge of the matter.

It is stated that the town had a pest house somewhere near Mocksville, but it was also shown that no patient had ever been treated there and by fair and reasonable intendment it appears that no care or attendance was provided.

The court is inclined to the opinion that if conditions had been different, if the county pest house had been properly equipped and ready, and nurses and sustenance provided, the County Commissioners might have reasonably required that patients of this character should be removed into the public pest house, provided the quarantine could be made effective that way. This aspect of the case however is not presented. The county pest house was not ready, and time was of the essence.

The court holds that under the statute, and on the facts of the case, the Superintendent of Health had the power to direct this removal and provide for the maintenance of the patient to the amount of its reasonable worth; that the

question was left to the jury under proper instructions and that the judgment of the court below be

Affirmed.