BLUE RIDGE INTERURBAN RAILROAD COMPANY v. R. M. OATES AND HENDERSONVILLE LIGHT AND POWER COMPANY.

(Filed 13 December, 1913.)

1. **Corporations—Repeal of Charter—Legislative Powers—Constitutional Law.**

By express provision of Article VIII, sec. 1, of our Constitution all legislative powers conferred upon corporations are taken by them subject to the legislative power of repeal.

2. **Statutes, Interpretation — Vested Rights — Condemnation—Summons—Prosecution Bond.**

In order to acquire a vested right under a statute to condemn lands, which has subsequently been repealed, it is necessary to show a finality by judgment in the proceedings before the later act had become effective; and where it appears that the summons was served in time, but that the prosecution bond, made a prerequisite by Revisal, 450, was not, no vested right in the former statute can be acquired by the further prosecution of the condemnation proceedings.

3. **Same—Railroads—Water Rights.**

Chapter 94, Laws 1913, ratified 8 March, 1913, amending chapter 302, Laws 1907, excepts from the provisions of the prior act the condemnation of "any water-power, right, or property of any person, firm, or corporation engaged in the actual service of the general public, where such power, right, or property is being used or held to be used or developed for use in connection with or in addition to any power actually used by such person, etc., serving the general public." *Held*, no vested right was acquired under the acts of 1907 by an "interurban railroad company" so as to except it from the provisions of the act of 1913, which had only issued the summons in condemnation proceedings before the later act had become effective. A vested right could have been acquired only by final judgment prior to the repealing act.

4. **Condemnation—Trial by Jury—Procedure.**

While ordinarily a jury trial is not required in condemnation proceedings, except as to the assessment of damages, the general rule does not apply where the pleadings put at issue the question as to whether the character of the lands is such as to be embraced within the right conferred or within an exception to that right under the terms of a statute.

5. Condemnation—Verdict, Directing—Issues of Fact—Appeal and
   Error—Procedure.

Where the judge erroneously holds that an issue answered by
the jury was a "question of fact" and not an issue of fact, in
condemnation proceedings, 'and strikes out the answer found
and enters one directly opposite, not as against the weight of
the evidence or in his discretion, it will be held for reversible
error, and in proper instances the Supreme Court will order
that the answer of the jury be reinstated.

WALKER, J., dissents; BROWN, J., concurs in dissenting opinion.

APPEAL by defendants from *Lyon, J.*, at May Term, 1913, of
HENDERSON.

*Manning & Kitchin, Smith & Shipman, and Tillett & Guthrie
for plaintiff.*

*James H. Merrimon, Michael Schenck, Britt & Toms, Staton
& Rector for defendants.*

CLARK, C. J. The Hendersonville Light and Power Company was chartered in 1904 for the purpose of supplying electric
lights and power to Hendersonville and the surrounding community. Its power plant is located on Big Hungry Creek near
Hendersonville; its lands consisting of three small tracts known
as Power No. 1, Power No. 2, and Power No. 3, the first only
being fully developed and supplying the electric power used at
this time. The second is partly developed, and the third held
for development in connection with the others. The company
has furnished for ten years electric light and power to the people of Hendersonville and the vicinity. In 1912 George E.
Laidlaw and others obtained a charter in South Carolina under
the name of the Manufacturers Power Company, but finding
that they could not condemn water-power under our laws, it
being prohibited to any water-power company to do this by
Laws 1907, ch. 74, they organized the Blue Ridge Interurban
Railroad Company, claiming that under the laws of 1907, ch.
302, having the power to construct an interurban railroad, they
could condemn water-powers for that purpose.

The plaintiffs instituted this proceeding to condemn for their
purposes the tracts No. 2 and No. 3 above described, belonging

to the defendants. The summons was dated 27 February, 1913, but the prosecution bond which is required by Revisal, 450, 'to be given "before issuing the summons" is dated 10 March, 1913, and summons was served on that day on the defendants.

Chapter 74, Laws 1907, conferring the power of condemnation on telephone and electric light and power companies, contains the following provisos: *"Provided,* that the power given under this act shall not be used to interfere with any mill or power plant actually in process of construction or in operation; and *Provided further,* that water-powers, developed or undeveloped, with the necessary land adjacent thereto for their development, shall not be taken." Chapter 302, Laws 1907, authorizes street and interurban railway companies "owning land on one or both sides of a stream" as follows: "Whenever such company shall not own the entire water front, or all the lands, water rights, or other easements necessary to be used in fully developing such water-power, then such railroad company shall have the power to acquire any other lands, water rights, or easements which may be needed to fully develop such water-power; and if such company cannot agree with the owner or owners for the purchase of such lands, water rights, or other easements, the same may be condemned, appropriated, and taken by such railway company for that purpose, and the procedure shall be the same as that provided by chapter 61, Revisal 1905, entitled 'Railways' and relating to the condemnation of lands for railroads."

It would therefore seem that if a company needed a water power to produce electric power, and styled itself an electric light and power company, it could not condemn the waterpower of another for that purpose. Chapter 74, Laws 1907. But if it styled itself "a street and interurban railway company," and should "own land on one or both sides of a stream which can be used in developing water-power," it might have condemned the additional lands "needed to fully develop such water-power." Chapter 302, Laws 1907. *Power Co. v. Whitney,* 150 N. C., 34, held that water-powers could not be condemned in this State, being against our public policy as declared by chapter 74, Laws 1907.

While matters were in this state, the Legislature enacted chapter 94, Laws 1913, ratified 8 March, 1913, which was entitled "An act to amend chapter 302, Laws 1907, relating to the right of eminent domain." The amendment consisted in the addition to said chapter 302, sec. 1, Laws 1907, of the following words: *"Provided further,* that such company or companies shall not have the power to condemn any water-power, right, or property of any person, firm, or corporation engaged in the actual service of the general public, where such power, right, or property is being used or held to be used, or to be developed for use in connection with or in addition to any power actually used by such persons, firms, or corporations serving the general public." This act, ratified 8 March, 1913, was subsequent to the date in the summons issued by the plaintiff in this proceeding (27 February), but was prior to giving the prosecution bond in that case, which is required to be done "before the summons is issued," and was also prior to the service of the summons in this case. At that time the plaintiff had acquired no vested right in the land sought to be condemned, and the Legislature had the power to withdraw, or repeal, any provision of law under which the plaintiffs could have acted, if indeed they were authorized to condemn this property by chapter 302, Laws 1907.

In *Dyer v. Ellington,* 126 N. C., 945, it is said: "Until the right becomes vested, we think it can be destroyed by the Legislature. As the laws of one Legislature do not bind another, except in so far as they may be absolute contracts, we must take Revisal, 2830, as merely a rule of construction, having no application where the intention of the Legislature clearly and explicitly appears to the contrary." In *Williams v. R. R.,* 153 N. C., 365, the Court said: "Where the suit is brought during the life of a statute, and is pending at its repeal, without having gone to judgment, the Legislature may, by express terms, take away the right of action. *Dyer v. Ellington, supra.* The power of the Legislature to destroy, by a repealing act, a penalty before it has become vested by a judgment, is placed upon

the ground that it is a right created by statute—a favor conferred by legislative act which may be withdrawn by express provision before judgment."

. In *Pearsall v. R. R.,* 161 U. S., 637, cited and approved in *Bank v. Glenn,* 163 U. S., 425, it is said: "Where no act is done under the provision and no vested right is acquired prior to the time when it is repealed, the provision may be validly recalled without thereby impairing the obligation of the contract." To same effect *R. R. v. Texas,* 107 U. S., 240.

The Legislature may alter a provision of law at any time before the rights of parties are settled. *Phifer v. Commissioners,* 157 N. C., 150; *S. v. Cantwell,* 142 N. C., 616. In *R. R. v. Nesbitt,* 10 Howard (U. S.), 395, it was held that even after the acts required to condemn had been performed, except payment of compensation assessed, it was competent for the Legislature to repeal. *Wilson v. Jenkins,* 72 N. C., 9.

A man's land should stand condemned when, and only when, every step which the law prescribed to that end has been complied with. *S. v. Jones,* 139 N. C., 639. There is no vested right under any general statute until all necessary steps have been taken. *Gaslight Co. v. Hamilton,* 146 U. S., 269. A right is vested when judgment is entered. *Dunham v. Andrews,* 128 N. C., 213. It is when the right becomes absolute that no subsequent repeal can invalidate it. *Copple v. Commissioners,* 138 N. C., 134.

Even if the right to condemn water-powers had been conferred upon the plaintiff company by a special act of the Legislature, it was competent for the Legislature to repeal it. The Constitution of North Carolina, Art. VIII, sec. 1, prescribes: "Corporations may be formed under general laws, but shall not be created by special act except for municipal purposes, and in cases where, in the judgment of the Legislature, the object of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time or repealed." This provision was placed in our Constitution, as it has been placed in the constitutions of all the other States, to avoid the effect of the

*Dartmouth College* decision, which held that the charters of corporations were contracts, and not privileges revocable at the will of the State. This provision in our Constitution fixes every corporation taking out a charter since 1868 with notice that the State has the right to repeal or alter such charter at will. *Wilson v. Leary,* 120. N. C., 92; *Ward v. E. City,* 121 N. C., 2; *Coleman v. R. R.,* 138 N. C., 354.

At the time the act of 8 March, 1913, was enacted, the plaintiff had filed no prosecution bond nor complaint, and the summons was not served. It goes without saying that it had acquired no vested right to condemn the defendants' land and could not do so until judgment had been obtained in such proceeding. The matter turns, therefore, on the question whether upon the terms of chapter 94, Laws 1913, the land in question is subject to condemnation.

It is true that from the decision in *R. R. v. Davis,* 19 N. C., 451, down to the present it has been held that as to property within the scope of condemnation proceedings a jury is not required except as to the assessment of damages. But whether or not land comes within the scope of property subject to condemnation is a matter of law depending upon the finding of fact by a jury as to the nature of the land sought to be condemned, when that is put in issue by the pleadings, as in this case.

If, therefore, the tracts Power No. 2 and Power No. 3 were either "a water-power, right, or property of any person, firm, or corporation, engaged in the actual service of the general public, where such power or right of property is used, or held to be used, or to be developed for use in connection with or in addition to any power actually used by such person, firms, or corporations serving the general public," it is specifically withdrawn from the power of condemnation by chapter 94, Laws 1913, as is also a graveyard or other property also exempted from condemnation by the statute.

The essence of the defense in this proceeding is that tract, Power No. 2, was such property as was exempted from condemnation by plaintiff under chapter 94, Laws 1913. This was an issue of fact which the judge properly submitted to the jury,

and the jury found that it was property which "could be developed as a water-power or used as such in connection with or in addition to the power actually in use by the defendant company." Upon this verdict judgment should have been entered for the defendant on that issue.

There was ample evidence to submit that issue to the jury. The judge did not set aside the verdict as being against the weight of the evidence nor as a matter of discretion, but erroneously held that this was a "question of fact," and not an issue of fact, and thereupon struck out the response of the jury "Yes" to the tenth issue, that it was such property, and entered his own response "No" to that issue as a matter of law, or rather as a finding of a question of fact which was for the court. In this he erred.

The action of the court in this respect is reversed, and the verdict of the jury as to the tenth issue must be restored, with directions to enter judgment thereon in favor of the defendants as to the tract Power No. 2. It seems that there is no real controversy over the other tract.

The defendants need this water-power for their own use, as the jury find, upon the evidence.

Reversed.

WALKER, J.; dissenting: This is a proceeding to condemn a water-power for the use of the plaintiff, a public-service corporation. No question is raised as to its general right to condemn, as the use is a public one, but defendant avers that the particular property is not the subject of condemnation under the terms of Acts of 1913, ch. 94. Ever since the case of *R. R. v. Davis,* 19 N. C., 451, was decided in 1837, this Court has held with singular unanimity that all questions involved in the proceeding are for the court to decide without a jury, unless otherwise directed by the Legislature. There is no such provision in this instance. There are many cases to this effect, the latest being *Luther v. Commissioners, post,* 241. Even the assessment of damages is not required to be made by a jury, it not being a controversy respecting property within the meaning of the Con-

stitution. *Davis v. R. R., supra,* per *Ruffin, C. J.* In *Abernathy v. R. R.,* 150 N. C., 97, where the question was presented, *Justice Connor* said for a unanimous Court: "While in other special proceedings, when an issue of fact is raised upon the pleadings, it is transferred to the civil-issue docket for trial, in condemnation proceedings the questions of fact and law are passed upon by the clerk, to whose rulings exceptions are noted, and no appeal lies until the final report of the commissioners comes in, when, upon exceptions filed, the entire record is sent to the Superior Court, where all of the exceptions are passed upon and questions may be then presented for the first time. *R. R. v. Stroud,* 132 N. C., 413; *R. R. v. Newton,* 133 N. C., 132; *Porter v. Armstrong,* 134 N. C., 447; *Durham v. Riggsbee,* 141 N. C., 128. The reason for this practice is discussed in these cases. Pursuant to these decisions, the clerk should have found whether the plaintiff was the owner of the land before ordering the appraisement. If he had found that he was such owner, he would have dismissed the proceeding, and plaintiff could have appealed. If he had found him to be the owner, the defendant could have excepted, the clerk would have appointed the commissioners, and upon the coming in of the report and exceptions the entire record would have been open to review. Assuming that the clerk found that plaintiff was the owner, the case was properly in the Superior Court for all purposes. We have held that in proceedings instituted by the corporation the only issue of fact to be submitted to the jury was the amount of compensation. *R. R. v. R. R., supra,*" citing *R. R. v. R. R.,* 148 N. C., 61; *R. R. v. Lumber Co.,* 132 N. C., 644; *Durham v. Riggsbee,* 141 N. C., 128. He then says that the judge can, at his discretion, call a jury to his aid, but as we know by the settled rule, he is not bound by the verdict, but may accept or reject it.

There are statutes which provide for a jury trial on the question of compensation, and some of the decisions proceed upon this ground, when referring to it as an issue for a jury.

This Court has held, contrary to the decisions in some other jurisdictions, that in the absence of legislation, even the matter

of compensation may be tried without a jury. The order of condemnation, as to facts, is not reviewable in this Court, we being bound by the finding of the Court below. *Luther v. Commissioners, supra,* where the cases are cited; *Newton v. School Committee,* 158 N. C., 186. The question was fully discussed in *S. v. Jones,* 139 N. C., 613. In that case this Court held that the landowner is not entitled to a jury trial upon the question of compensation, unless given by statute, citing *R. R. v. Newton,* 133 N. C., 134, and *S. v. Lytle,* 138 N. C., 738, in both of which the opinions were delivered by the *Chief Justice.* It was also held that the condemnor was not required even to wait until compensation was made, before The Code, sec. 946, was enacted, requiring payment before entry. The *Newton case* is a strong and decisive one. The Court, by the *Chief Justice,* clearly and emphatically denies the right to a jury, even as to compensation, unless it is conferred by statute, and says that "our decisions are uniform" upon the subject. The object of the law is to expedite the construction of works of internal improvement without interruption, says the Court in that case, and especially in the same case upon an application for a writ of prohibition. *R. R. v. Newton,* 133 N. C., 136. It cites the case of *R. R. v. R. R.,* 83 N. C., 499, with approval, and that involved the very question we have here, that it is a question of fact and not an issue of fact, as the defendant sought to condemn a part of plaintiff's right of way, and the latter denied that it was condemnable. In the *Newton case* numerous decisions of this Court are cited in support of the conclusion of the Court. I have no time, at this late hour in the term, to discuss the case more at large, and to demonstrate the similarity between this case and our former decisions. It is sufficient to say that even a cursory examination will show that we are making a wide departure from this settled principle, so important to be preserved for the public good and convenience. The Legislature may give the right of trial by jury; but let us wait for its action.

BROWN, J., concurs in the dissenting opinion.